ARCHIBALD WILLIAMS, appellant, *v.* THOMAS BRUNTON *et al.* appellees.

*Appeal from Adams.*

It is a well established rule, that in an action of *ejectment,* the landlord may appear and defend the cause in the name of the tenant, or in his own name; and also that where a tenant from negligence or fraud has omitted to appear himself, or to give the landlord the necessary notice, the Courts will set aside a judgment by default against the tenant, upon proper affidavit being made by the landlord.

A person claiming to be let in to defend in *ejectment,* must show that his title is connected to and consistent with the possession of the occupant.

A judgment or a decree may, for some purposes, be considered as an extinction of the original cause of action; for instance, for the purpose of regulating the interest on money to which a party is entitled before final satisfaction of the debt. But it is equally true, that for many other purposes, as for the ascertaining of priority of liens for instance, the principle of extinction or merger finds no application.

A judgment or decree, and a subsequent purchase and obtaining of a deed for the land from the Master or sheriff, is regarded as being connected with, and as being in aid of the mortgagee's original title. A subsequent title, so obtained, is clearly consistent with the first title.

The statute concerning the action of *ejectment* does not specially provide for cases of landlords and other persons interested applying to be let in to defend, but refers to cases only where the party, or his assigns, or those claiming under him move to set aside defaults. Where the statute is silent, the practice and rules of the Common Law are applicable.

Under the English practice before the Statute of Geo. I. the landlord, who was admitted to defend, had a right to have the judgment against the casual ejector set aside. The statute afterwards provided that, in such cases, Courts may stay the execution against the casual ejector. One or the other may now be done, in the discretion of the Court.

After one had been permitted, in an action of *ejectment,* to come in and plead, the plaintiff failed to join issue on the pleas. The defendant's counsel then moved the Court to order the plaintiff to join issue, and the motion was allowed. The plaintiff, *in propria persona,* declined in Court to join issue, and a jury was sworn and a verdict rendered against him: *Held,* that his declining to take issue on pleas which presented a full defence to his action, amounted to a discontinuance, and that the correct practice would have been, for the Court to have dismissed the case for want of prosecution.

EJECTMENT, in the Adams Circuit Court, originally brought by the appellant against the appellee, Brunton. Subsequently the other appellee, John P. King, was let in to defend the suit, and pleaded for himself and Brunton. At the Sep-

tember term 1846, the Hon. Norman H. Purple presiding, on motion of the attorneys of King and Brunton, the plaintiff below was ruled to join issue, which he declined doing, whereupon a jury was impaneled and sworn, and a verdict rendered of "not guilty," on which there was judgment. The plaintiff appealed.

*A. Williams, pro se,* argued orally.

1. The Court erred in setting aside the judgment against Brunton, upon the motion of King and allowing him to defend; because

*First.* There was no privity between them. None but landlords are permitted to defend, and to establish the relation of landlord and tenant; privity, either of contract or title, is indispensable. *Jackson* v. *Chase,* 2 Johns. 86; *McKircher* v. *Hawley,* 16 do. 289; 1 Caines, 151; 6 Cowen, 594; 17 Johns. 112; 1 Wend. 103; 1 Bibb, 128; 4 do. 87; 4 Johns. 215; 16 do. 291.

*Second.* If there was privity whilst the mortgage was in force, it ceased upon its foreclosure. The mortgage being thereby extinguished, and the decree of foreclosure substituted in its stead, the only remedy upon it was, to sell the land for the satisfaction of the decree. 3 Scam. 263.

*Third.* The affidavit upon which the motion was founded, shows no sufficient reason for setting aside the judgment. It neither avers that King had title, nor denies that the plaintiff had title; nor is there any pretence of collusion between the plaintiff and defendant. *Good Title* v. *Bad Title,* 4 Taunt. 820.

*Fourth.* Allowing that King had shown himself entitled to defend, yet the judgment against Brunton ought to have stood. Runnington on Eject. 403; 4 Johns. 495-6.

2. The Court erred in trying an issue when none was joined. 2 Tidd's Pr. 727-8, 925, 718; 1 do. 472; 2 Moore, 215; S. C. 4 Eng. Com. Law R. 416; 3 Brod. & Bing. 1; S. C. 7 Eng. Com. Law R. 321; Stephen on Pl. 237-8, 109, 56, 76; *Cooper* v. *Spencer,* 1 Stra. 641; *Heath* v. *Walker,* 2 do. 1117.

*O. H. Browning & N. Bushnell,* for the appellees, filed the following written argument:

I. The first ground relied on by the plaintiff in error to reverse. the judgment in this case, is, that the defendants brought the case to trial on the general issue pleaded by them, and to which neither the defendants nor the plaintiff had added the *similiter;* in other words, the want of a *similiter* is relied on as a ground of error. Now, the omission of a *similiter* is cured by verdict; it is no objection to bringing a cause to trial. 1 Duer's Pr. 449; *Morrison* v. *Hart,* Hardin, 150; *Rowbone* v. *Hickman,* 1 Stra. 551; 2 Tidd's Pr. 924–5; *Jared* v. *Goodtitle,* 1 Blackf. 29 and notes. So where a trial is had without a plea, (*Brazzle* v. *Usher,* Bre. 14,) or with an impossible plea, (*Commonwealth* v. *Walker,*) 1 Hen. & Munf. 153,) it is cured after verdict.

The cases proceed upon the ground that where there has been a trial in the above cases, the party complaining of the want of a *similiter* or of a plea, has had the benefit or the opportunity of a full and fair trial just as if in the given case the *similiter* had been joined or the plea put in. Now, in in this case, the same thing appears from the record. The plaintiff was in Court in person, and at the very time he is so in Court, and in his presence a jury is called and sworn to try the cause. Whether the plaintiff did or did not assent to this, or whether he did or did not offer his evidence to the jury, does not appear from the record; neither does the record show that the plaintiff objected to the calling of the jury, or the trial of the cause, or to the verdict of the jury, or to the judgment being rendered on the verdict. The plaintiff simply declined to add the *similiter* to the defendants' pleas himself, but he did not object to the *similiter* being added by the defendants, nor to the trial of the cause without it; and whether he stood by and permitted such proceedings without objection, and thus silently acquiesced in them, or whether he participated in them and thereby actu-· ally assented to them, he has not thought best for him to show from the record. In either case, the Court will see that the plaintiff has had the same opportunity to have his rights fully

Williams v. Brunton *et al.*

and fairly investigated by the jury, as if the *similiter* had in fact been added, and if he in fact participated in the trial, there cannot be the shadow of a pretence for the objection made here. Now, the adding the *similiter* is a mere matter of form, so much so that it is usual for the party filing a pleading which concludes to the country to add the *similiter* himself. 1 Duer's Pr. 449; Gould's Pl. 315, § 21. And although in such a case the opposite party may strike it out, yet he can do so only to demur, not for the sake of delay or from any cause not required to perfect the case for a trial. 2 Tidd's Pr. 718, 726; 14 Johns. 345. At all events, this is an amendable defect, and if the Court are of opinion that the defect requires amendment, we will be allowed time to procure the necessary amendment to sustain the judgment. Nothing is better settled, than that the want of or defect in a *similiter* is amendable after verdict. *Sayer* v. *Pocock*, Cowp. 407; *Harvey* v. *Peake*, Burr. 1793; 1 Stra. 551; 2 Saund. 319 and notes; 1 Duer's Pr. 449; Gould's Pl. 315, §§ 20, 21. Even when the want of a *similiter* was objected to previously and on the trial. 1 Chitty's Pl. 631; *Wright* v. *Horton*, 2 Eng. Com. Law R. 443. And also after error brought, is indeed not considered as being assignable as error after the judgment; it is considered simply as the same question as that arising after the verdict. *Brewer* v. *Sarpley*, 1 Wash. ( Virginia R. ) 469; *Turberville* v. *Self*, 2 do. 91.

The Circuit Courts, at any future term, may make any proper order to sustain a judgment of a previous term, but not to vacate it. *Lampsett* v. *Whitney*, 3 Scam. 170. And this is a proper case for such an order. *Vanzandt* v. *Jones*, 3 Dana, 464; *Cook* v. *Burk*, 5 Taunt. 164; *Snyder* v. *Snyder*, 4 Cowen, 394.

II. That a landlord will be admitted to defend in *ejectment*, in the place of the tenant in possession, has been already decided by this Court. *Thompson* v. *Schuyler*, 2 Gilm. 271. This is simply adopting the Common Law practice into the proceedings under our ejectment law. At Common Law, the landlord might defend in ejectment jointly with the tenant in possession; or, if through the negligence or

fraud of the tenant in not appearing, judgment by default was entered against the casual ejector, the landlord was permitted to have the judgment set aside, and to defend alone. Adams on Eject. 255, 257; *Underhill* v. *Durham,* 1 Salk. 256. This admission of the landlord to defend was a matter of *right. Fenwick's* case, 1 Salk. 257. And, although the practice in setting aside the judgment by default against the casual ejector was somewhat shaken by the decision in the case of *Goodtitle* v. *Hart,* 3 Strange, 830, yet that is the only known decision adverse to such a proceeding. It is certainly contrary to what has been generally considered as law, and is supposed to have given rise to the Statute 11 Geo. 2, Ch. 19, § 13, which is considered, not as introducing a new rule of practice, but as a legislative recognition of the law as it stood previous to the decision in *Goodtitle* v. *Hart. Fairclaim* v. *Shamtitle,* 3 Burr. 1290, 1301, per Justice Wilmot; Adams on Eject. 256–7.

The question then is, who is a landlord within the meaning of the rule? We answer, any person "whose title is connected to and consistent with the possession of the occupier;" and when the plaintiff claims an interest in the land inconsistent with the title of such landlord, the latter may be let in to defend. *Fairclaim* v. *Shamtitle,* 3 Burr. 1290; Adams on Eject. 259–60; *Stiles* v. *Jackson,* 1 Wend. 316; *Driver* v. *Lawrence,* 2 W. Black. 1259; *Buford* v. *Gaines,* 6 J. J. Marsh. 34, 40–2; *Norris* v. *Doncaster,* 4 T. R. 122. A mortgagee, whether in possession or out of possession, is a landlord within the rule. Coleman's Cases, 56; *Doe* v. *Cooker,* 8 T. R. 645; 1 Powell on Mort. 203, note *g; Jackson* v. *Stiles,* 11 Johns. 407. And the same is true of the assignee of a mortgagee, though out of possession. *Jackson* v. *Babcock,* 17 Johns. 112.

The question as to who is a landlord, and the principle on which he is let in to defend in ejectment, are most fully discussed in the above case of *Fairclaim* v. *Shamtitle,* 3 Burr. 1290, which is, perhaps, the most important case on the subject. The principle, as laid down in that case, and which has been followed by all succeeding cases, is, that when the

Williams *v.* Brunton *et al.*

interests of the party asking to be made defendant and the tenant in possession do not clash so that they may make inconsistent defences, and their estates or interests are so connected that it is more for the interest of the applicant that the tenant remain in possession than that he be turned out of it by a title adverse to both, then such party is a landlord within the meaning of the rule, and will be let in to defend. The arguments for it are, that it can be no inconvenience to the tenants, prevents collusion between the tenant and third persons, that it is but just to a party whose interest may be materially affected by a proceeding to which he is not a party; and that it is no answer to say that the landlord can himself in turn bring ejectment and recover possession against the plaintiff in the prior suit, for the reason that there is a great difference between being plaintiff or defendant in an action of ejectment. 3 Burr. 195. This case comes clearly within the rule. Brunton and King both claim under Walker. Brunton purchased of Walker and entered into possession under him after the mortgage to King was made and recorded, and now holds by title subordinate to the mortgage. From these facts, King, on the perfection of his title under the mortgage, would not, as against either Walker or Brunton, be required to show title in Walker. The relation of the parties would preclude both Walker and Brunton from denying Walker's title. *McConnell* v. *Johnson*, 2 Scam. 522, 528; *Jackson* v. *Walker*, 7 Cowen, 637; *Jackson* v. *Hinman*, 12 Johns. 292. But if Williams recovers in this suit, King, to avail himself of his mortgage title and to recover in ejectment against Williams, would be required to show title in Walker, a matter which might put him to great inconvenience. This shows his interest in defending Brunton's possession, while their defences cannot clash, for both must rest on the title of Walker. It can work no injustice to Williams, for King can defend only in the place of Brunton, and to the same extent that Brunton might have done, (*Jackson* v. *Stiles*, 1 Cowen, 575,) and probably would have done, but from fraudulent motives. And this last principle explains why, in the case of *Jackson* v. *Babcock*, 17

Johns. 112, the party applying to defend was prohibited from defending under his prior judgment, which, under the circumstances of the case, the tenant in possession could not have relied on.

But it is said that there is no privity between King and Brunton, and for that reason King will not be allowed to interfere, and the case of *Jackson* v. *Fuller*, 4 Johns. 215, is relied on to sustain this position.

In the first place, that case turns upon the question as to whether the party in possession was entitled to a notice to quit, and that again depends upon whether the parties are technically landlord and tenant. Notice to quit is confined to tenancies in the common legal acceptation of the term. This objection is a covert attempt to fritter away the rule as before laid down, and to narrow down the right of a party to defend in ejectment as landlord to cases where the party is a technical landlord.

Again. It is not necessary to discuss the question how far the relation between King and Brunton comes within either of the four Common Law privities, mentioned in the 2 Thomas' Coke, 408, top paging. A "privity of interest," (*Jackson* v. *Babcock*, 17 Johns. 112,) or "a privity of contract," (*Jackson* v. *Laughland*, 2 do. 75,) is sufficient. No "privity of estate" is necessary. This "privity of interest" seems to be a new privity, or new mode of expression, adopted to denote the imperfect connection which is necessary between the parties for the purposes of the case under discussion, and other analogous cases. It is expressly distinguished from the "privity of estate" by the New York statute on this precise subject. 4 Johns. 495, note *a*. In this case, there is both a "privity of interest" and a "privity of contract."

As to the privity of interest: Both parties claim under the same title. Their interests are perfectly consistent with each other, the one being subordinate to the other, and both making the component parts of one and the same estate. Any outstanding title, destructive of the fee on which rests the interest of Brunton, equally destroys the interest of King,

and hence both have a common interest in defeating such title.  King has not only this common interest with Brunton against an outstanding title, but, as we have seen, a peculiar interest in defending Brunton's possession, since thereby in proceeding against Brunton, King will be in a great measure relieved from the necessity of showing paper title in himself.  If standing in this relation, where the interests of King and Brunton depend on the same title, where these interests are perfectly consistent with each other, where their defences cannot clash, where an outstanding fee which defeats one destroys both, and where King has such a peculiar interest in defending the possession of Brunton; if, under these circumstances, King has not a "privity of contract" with Brunton so as to be entitled to defend that possession, then the rule as before laid down, is little less than a practical fallacy, and the meaning of the term "privity of interest" most incomprehensible.  The fact, that, from the relation of the parties, neither King nor Brunton can, the one as against the other, deny Walker's title, seems to us conclusive evidence of such privity.

As to the privity of contract:  The affidavit of King's agent proves a privity of contract between King and Brunton in this case.  The land in controversy and other lands were subject to King's mortgage.  King, by his agent, at the instance of Brunton, from a disposition to favor him, and for no other reason, agreed that he would first sell all the other lands, and would sell this tract only in the event that the other lands did not pay the debt; and Brunton in consideration thereof agreed not to encumber this land, nor to permit the same to be incumbered in the meantime, so that King should not be prejudiced by this indulgence.  The contract then, extended to this precise case.  Good faith in Brunton and the obligation of the contract required of him, that when sued, he should have immediately notified King's agents or have defended the suit; but, as the affidavit shows, he fraudulently failed to do so.  Brunton purchases land incumbered by a prior mortgage—takes possession under the mortgagor's title—then contracts with the mortgagee for his

own benefit, to remain in the undisturbed possession of the mortgaged premises. Is not here a "privity of contract" between King and Brunton, and that too, about the very things to be affected by this suit—the mortgage rights of King and the possession of Brunton?

But it is then said that the mortgage is merged in the judgment, and hence King cannot be admitted to defend.

Now admitting the merger for the sake of the argument, it is difficult to perceive how this at all invalidates the position arising out of the "privity of contract." In whatever light King's claim is to be viewed, he still has a specific lien on the land for a debt. Whether, as a mortgagee in a forfeited mortgage, he is seized of a defeasible legal estate, or whether by the process of strict foreclosure, he is in the act of procuring a legal estate which is indefeasible, or whether by the process of sale on foreclosure, he is in the process of collecting his debt by enabling the officer to convey an indefeasible legal estate to a purchaser in either event, and at whatever stage of the proceedings, he clearly has a right specifically connected with the land, depending upon the title to the land; and that, again, to some extent on the possession of Brunton under the title derived from their common grantor. This right it is important for him to protect, and concerning it he may lawfully contract. Concerning this right, after the judgment, when it was precisely the same as at present, and as at the time when this application for leave to defend was made, King and Brunton did contract. By the contract, Brunton was bound to protect that right, and preserve it to King unimpaired. He has violated this obligation, and is now fraudulently permitting King's interest to be endangered. Here, then, again is a "privity of contract" about the same interest and the same possession in controversy—the interest of King and the possession of Brunton. It cannot now lie in the mouth of Brunton to say that King has not a sufficient title or interest on which to interfere about the possession. He has admitted its sufficiency by contracting with King concerning this possession as connected with this precise interest; he has received the

benefit of that contract, and is bound by it to defend that possession as the means of securing King's right. The objection in this case comes from Williams. But it is founded on the want of a sufficient relation between King and Brunton to authorize King to interfere in Brunton's business. This is always the principle on whicn the objection is made, whether it comes from the tenant or from the plaintiff in ejectment. But if Brunton, by his own acts and contracts, has established or strengthened that relation between himself and King, and thereby precluded himself from making the objection, how can Williams, whose right to object depends on the absence of such relation, and the right of Brunton, make the objection for Brunton or in his stead?

But as to the merger. It may be in some sense true that the mortgage is merged in the judgment. *Aldrich* v. *Sharp*, 3 Scam. 261–63. If, as is presumed, it is only meant that by a judgment on a mortgage, the debt is ascertained and fixed, and thereby becomes subject to the legal incidents of a judgment debt, there is no doubt of its correctness. But if it is meant that the mere judgment of its own efficacy, without sale or deed retro-acts upon the mortgage, and disturbs or drowns the lien and estate created by it on the principle of merger, there will be some difficulty in admitting it. The debt is one thing, the mortgage a collateral security for that debt, is another and a very different thing. The debt remains, notwithstanding the amount is ascertained by judgment. The lien and estate created by the mortgage is anterior to and independent of the judgment, and of the suit in which it is rendered. Merger takes place whenever a greater estate and a less meet and coincide in the same person, without any intermediate estate; its effect is to consolidate two estates, and to confound them into one; (2 Thomas' Coke, 248, note K. top paging;) or when a security of a higher nature is substituted for one of an inferior degree, the latter is said to be merged in the former. *Mason* v. *Eakle*, Bre. 52. But by a judgment on the mortgage no new estate is created or vested in the mortgagee, no new lien, no additional or higher security is obtained for the debt. Whatever

lien estate or security exists, exists by virtue of the original mortgage. The form of the judgment is a mere ascertainment of the debt to be paid out of the specific property. When the execution issues, it is a specific execution, no levy is necessary, and when the land is sold, it is sold not to satisfy a lien created by the judgment, but that which is created by the act of the parties by the mortgage. Thus the proceedings by suit on the mortgage are not to create new liens or securities, but to perfect and enforce old ones, and to which no new validity or efficacy is given by the direct operation of the judgment. There is, hence, nothing originating in the judgment, in which the mortgage, as an instrument of conveyance, can merge.

The history and principles of foreclosure further confirm this position. As between the parties the mortgagee is at law the owner of the estate, (4 Kent, 154–56,) while in Chancery, before foreclosure, he is considered as having simply a chattel interest in the premises. *Demarest* v. *Wynkoop*, 3 Johns. Ch. R. 129. At Common Law, while the title of the mortgagee was defeasible on the performance of a condition subsequent by the mortgagor, a failure in the strict performance of the condition operated as a confirmation of the estate. When Courts of Chancery began to interfere in behalf of the mortgagor to relieve him from the consequences of such forfeiture, the mortgagee was necessarily compelled to apply to the Chancery Courts to perfect his security, where, basing himself on his legal title, he insisted by process of strict foreclosure, either that his debt should be paid or his title confirmed. From the nature of this proceeding, it was manifestly impossible that his lien and estate in the mortgaged premises could be merged in any interlocutory decree in the cause, for the cause proceeded upon the ground that the title was in him; it was to operate specifically on the mortgagor's equity of redemption, and bar it in the mortgagee's favor. Any interlocutory decree would only ascertain the debt and fix the time in which the mortgagor might have the privilege of redeeming the estate. If the debt was not paid by the time fixed, the

final decree confirmed the title of the mortgagee. If the mortgagor paid the money, the final decree gave him back his pledge, and the estate of the mortgagor was gone. But at all times before the payment of the mortgaged debt the mortgagee still owned the land, and the mortgage title would avail him for every purpose of protection. A foreclosure by a decree of sale instead of the practice by strict foreclosure has been very generally adopted in New York and in this State, as the course most beneficial to the parties, though the power of the Courts to decree a strict foreclosure has not been questioned. *Mills* v. *Dennis*, 3 Johns. Ch. R. 367; *Lansing* v. *Goelet*, 9 Cowen, 359; *Warner* v. *Helm*, 1 Gilm. 220, 232. But the foreclosure, whether the proceeding is by a strict decree, or by a decree of sale in Chancery, or by judgment at law on *scire facias* under our statute, looks to the same result, the payment of the mortgage debt or the destruction of the equity of redemption remaining in the mortgagor; in the first case by estopping that equity, and in the two last, by selling and conveying that equity, as well as the interest of the mortgagee, (9 Cowen, 358,) to the purchaser under the judgment or decree. Now, on what principle can a proceeding thus adopted for the mutual benefit of the parties, while it is inchoate, resting merely in judgment or decree, before the property has been sold, or any part of the mortgage debt paid, be construed as depriving the mortgagee of the protection of his mortgage title, while the more stringent proceeding for which this milder substitute has been adopted, would undoubtedly secure to him that protection? Accordingly, decisions are not wanting on this point. In the case of *Den* v. *Stockton*, 7 Halst. 322, the mortgagee had filed her bill to foreclose, and procured an order of sale, and bid at the sale and accepted the sheriff's deed for the premises. On ejectment brought by the mortgagee, it was objected that the sale was invalid, and that by these proceedings the mortgagee had divested herself of her mortgage title. Drake, Justice, in delivering the Opinion of the Court, says: "By bidding at the sheriff's sale and accepting a deed, Jane Hart, the mortgagee, acknowledged

no title inconsistent with her own. That act was intended to come in aid of her mortgage and to perfect her title. Such would be the effect if the proceedings are valid, but if they are void, it is not perceived how they could take away her right of action on her mortgage. There is nothing in the nature of these proceedings which divests or suspends the legal estate and right of possession until a sale takes place. By that the estate of both mortgagor and mortgagee are transferred to the purchaser. A mortgagee may bring ejectment pending a bill to foreclose." The Court had, in a previous part of the Opinion, decided that the order for a sale on foreclosure in that case was a valid order, and hence they expressly determine in that case that a decree of sale in a suit to foreclose a mortgage is not such a proceeding as "divests or suspends the legal estate and right of possession," in the mortgagee till the sale takes place—then, and then only, is such estate divested—a decision which seems conclusive as to the merger of the legal estate by the mere judgment or decree ordering a sale. See, also, further on this subject, the elaborate argument of Chancellor Jones in the case of *Lansing* v. *Goelet*, 9 Cowen, 347, embracing the principle and history of the practice of selling mortgaged premises instead of strict foreclosure, which fully sustains the view above taken. The case of *James* v. *Moray*, 2 Cowen, 284–6–7, is strongly pertinent. That was a question as to the merger of a mortgage, and shows that a mortgage will not be merged in any proceedings which do not constitute a payment of the debt.

But even supposing it true, that in the language of the books, the mortgage in this case is merged in the judgment, what then? So is a simple contract debt merged in a judgment, and so is the judgment merged in a sale. So is the certificate of purchase and the equitable estate evidenced by it, merged in the deed executed after the redemption time expires. Such familiar law needs no illustration. Yet, because all this is true, did any one ever think of contending, that the equitable estate in the given case, is for all purposes annihilated? Each of these previous facts, may in

some sense be said to be merged in the subsequent proceedings; but for the purposes of justice, they are always considered as existing, and, aided by the doctrine of relation, are always available to sustain rights acquired under them, on the principle, that where divers acts are made to concur to one definite result, the original act shall be preferred, and to this the others shall have relation. *Jackson* v. *Call,* 3 Cowen, 79; *Lessee of Boyd* v. *Longworth,* 11 Ohio, 252; *Johnson* v. *Stagg,* 2 Johns. 520; *Klock* v. *Cronkhite,* 1 Hill's (N. Y.) R. 107. This doctrine of merger must always be taken *sub modo.* Merger is never favored at Law, still less in Equity. It is a rule of convenience. It will not be permitted to work injustice. It is allowed only for special reasons, to promote the ends of justice, and to subserve the fair intention of the parties. *James* v. *Moray,* 2 Cowen, 246, 284–5; *Starr* v. *Ellis,* 6 Johns. Ch. R. 393. And even in cases where the doctrine of merger technically applies, persons having interests depending on the estate which is merged, will be left in the same condition in point of benefit, as if no merger had taken place. For the purpose of upholding those interests, the particular estate, though merged, is said to have continuance in point of title, although it is merged in point of law. 2 Thomas' Coke, 451, 452, top paging; a principle broad enough to cover this case. We have already sufficiently shown the interest of King in still relying on his mortgage title, and will here leave this branch of the case. But it is said, that in this case, the judgment by default ought not to have been set aside, even if King was admitted to defend, but that the judgment should have been retained as the plaintiff's security.

We have already seen, that at Common Law, the landlord, on being admitted to defend, was entitled to have the judgment against the casual ejector set aside, and particularly where, as in this case, the tenant either from negligence or fraud, omitted to defend or to give the landlord notice of the suit. Adams on Eject. 255, 257. If the practice of permitting the judgment to stand as the plaintiff's security ever prevailed at Common Law, it was hence not impera-

tive on the Courts; but as the practice of admitting the
landlord to defend at all, was introduced for the purposes
of justice, so the practice of retaining or setting aside the
judgment was moulded to subserve the same purpose.   The
before mentioned Statute of the 11 Geo. 2, Ch. 19, § 13,
Adams on Eject. 256, and also the Statute of New York, 4
·Johns. 495, note A. which is a substantial copy of the for-
mer, provides, that on letting in the landlord to defend, the
Court may order a stay of execution on the judgment against
the casual ejector.   This pre-supposes that, the judgment
may stand.   But it is observable that there is in the Statute
nothing imperative on this subject, nothing directly relating
to the question as to whether the judgment shall stand or
be set aside, nothing but what is implied from the mere fact
that the Court may stay the execution.   As the above Stat-
ute of the 11 Geo. 2, was intended principally as a recogni-
tion of the Common Law practice, in allowing landlords to
defend, it may also be but a recognition of the practice in·
this particular.   It is hence a useful commentary on the
Common Law, and is another and a forcible argument to
show what the Common Law really was, that Parliament
intended to leave the question of the judgment under the
Statute, as it found it at Common Law,—to stand or be set
aside in the discretion of the Court, and as the justice of
the case might require.   Such has ever been the under-
standing of the New York Courts under their statute.   They
have never considered the statute of that State as either
conferring or taking away their power to set aside the judg-
ment; but have always exercised this power whenever jus-
tice required it, on the ground that the Common Law prac-
tice of allowing the judgment to stand arose from the fiction
of the action of ejectment, and that a mere fiction should not
be permitted to work an injury to the right.   *Jackson* v.
*Stiles*, 4 Johns. 493; *Jackson* v. *Harrow*, 11 do. 434; *Wood*
v. *Wood*, 9 do. 257.   In all these cases, so far as appears,
the question was not whether at Common Law the Court
had power to set aside the judgment, but whether that power
had been taken away by statute.   Under our statute, the

reasons for setting aside the judgment are ten-fold stronger than under the Common Law action.  At Common Law, the casual ejector, the party against whom the judgment purported to be entered, was, from the fiction of the action a mere cypher; the judgment concluded no one; the tenant or the landlord might bring new ejectment; the unsuccessful party in this suit might, in turn, bring his suit, and so on as often as either party desired it.  At Common Law this right was without limitation, and the Courts of Chancery never interfered only when repeated verdicts had determined in whom the right really was, and to prevent further suits which could be only vexatious.  But under our statute the case is widely different.  The defendant is a real party; the suit concludes the right; neither party can bring a new ejectment; even the judgment already entered concludes the rights of the parties, unless set aside in a specified time.  If, then, this judgment cannot be set aside on admitting the landlord to defend, the letting him in to defend is a mere mockery.  For while thus defending, before he can bring the cause to a trial, the prior judgment, the validity of which he is let in to investigate, by the mere lapse of one or two years, without any fault of his own, is shut down upon the tenant's right under which alone he can defend, and thus the very substratum of his defence is taken from him, and is gone forever.  Even in cases arising under our statute, in which the landlord might bring a new ejectment, there is great difficulty in maintaining the action under our statute over that of maintaining it at Common Law, arising from the fact, that under our statute the plaintiff must show title in himself, instead of in some other and prior party in the chain of title, which was sufficient under the Common Law fiction of ejectment.  This consideration adds additional weight to the argument for setting aside the judgment under our statute, which was used by Lord Mansfield, in the case of *Fairclaim* v. *Shamtitle*, for letting in the landlord to defend at all; "that there is a great difference between being plaintiff or defendant in ejectment."  Thus, whether the setting aside the judgment is mere matter of discretion, and

hence not assignable as error, or whether it is an act which this Court may review, we still think there is no reasonable ground for denying that the power exists, or that it has been properly exercised in this case.

But it is objected that the affidavit in this case does not exhibit sufficient merits in King or Brunton to authorize the setting aside the judgment by default under our statute. This objection is founded on a misapprehension. The application is not made under the statute, but at Common Law. The case is not provided for by our statute. Under that, the defendant must apply to have the judgment set aside. Here the applicant is a third party, and the very reason why he is driven to ask that the judgment be set aside as landlord is, that he cannot have it done as defendant. This case then is neither within the letter nor spirit of the law, which could never have been intended to abolish or interfere with this Common Law right. If the statute is to be looked to to regulate the admission of the landlord to defend, then it must be looked to to determine the mere power to admit, as well as to determine the stage of the proceedings and the facts and conditions on which the admission would be allowed; and as the statute is fearfully silent on this whole subject, the admission of any landlord to defend under any circumstances, or at any period of the cause, would be erroneous. Such an objection founded on the construction of the statute, which would overturn the decision of this Court in the case of *Thompson* v. *Schuyler*, 2 Gilm. 271, and destroy such important rights, without any apparent error, ought not to be tolerated a moment.

But even if the application is to be made under the statute, enough is shown to sustain the order setting aside the judgment. The Circuit Court is authorized to set aside a judgment by default within two years, "if satisfied that justice will be promoted and the rights of the parties more satisfactorily ascertained and established." Rev. Stat. 208, § 31. The form of language employed in this section makes it discretionary in the Court whether it will set aside the judgment. The Court in which the application is made is to be

satisfied, not the Supreme Court or any other tribunal. Is not then the act of the Court in setting aside a default, the exercise of a discretionary power, and is it subject to review in this Court?   But this affidavit contains sufficient to satisfy any Court, that both Brunton and King had some rights in the premises; that Brunton entered and remained in possession, under paper title, in fee purchased in good faith; that King, claiming a mortgage in fee under the same title by prior right, to which Brunton's was subordinate, was benefitted by Brunton's possession and deeply interested in defending it; that from these facts, King and Brunton, as to their respective interests derived from Walker, and which together completed the fee simple absolute, had a valid right in the premises against all the world, except as against a party who could show a superior and perfect paper title.   Now, had Williams such title?   The Court could not know, for his title had never been investigated or exhibited in Court.   Could King or his agent know?   They were strangers to Williams' title, and could not hence be presumed to know or required to swear as to its character or quality.   It must be sufficient that the affidavit discloses facts, from which the Court can see that King and Brunton each have interests in the premises, which can be defeated only by him who can exhibit a perfect title; that the record, in connection with the affidavit, shows that Williams obtained his judgment, which is now relied on to defeat those claims, by default, through the fraud of Brunton and without the exhibition of any title whatever? Under these circumstances, could any Court in the world doubt for a moment, that in the words of the statute, "the rights of the parties" would be "more satisfactorily ascertained and established" by setting aside the judgment and permitting the parties to submit their respective claims to the ordeal of a fair judicial investigation?   There is, hence, in this view of the case, no error in the proceedings.   The case of *Kelly* v. *Inman,* (3 Scam. 28,) in which the question whether a default should be entered, does not in the least invalidate this conclusion.   The application in that case was at a different stage of the proceedings, and under a different

section of the statute. In the affidavit filed in that case, there was neither a general allegation of merits, nor any statement of facts from which merits could be inferred. On the whole subject of merits, the affidavit was wholly silent. That case, then, was by no means analogous to the present in this particular. In this case, the facts from which the merits of Brunton and King are deduced, are clearly stated in the affidavit, and any general allegation of merits founded on those facts would be simply the statement of a conclusion of law which the Court can make as well as the party. On the contrary, the case of *Kelly* v. *Inman*, strongly confirms the sufficiency of the affidavit in this case; it appearing therefrom that the merits to be shown may consist as well in "an assertion of title in the defendant" as "in the denial of title in the plaintiff." 3 Scam. 31.

The Opinion of the Court was delivered by

KOERNER, J. This was an action of *ejectment*, originally brought in the Adams Circuit Court, by the plaintiff against the defendant, Brunton. The declaration was served and filed on May 7th, 1845. The usual rule to plead was entered upon filing the declaration. Afterwards, on the 19th day of September, 1845, a judgment was entered against the defendant, Brunton, by default, and a writ of possession was awarded. Afterwards, on the 25th day of April, 1846, O. H. Browning, as the attorney of the defendant, John P. King, filed his (said Browning's) affidavit and thereupon entered his motion to set aside the aforesaid judgment, and to grant a new trial. The said affidavit is in the words and figures following, to wit: "O. H. Browning, being first duly sworn, deposeth and saith, that he is one of the members of the firm of Browning & Bushnell; that said Browning & Bushnell were attorneys of John P. King to foreclose a mortgage executed to him by John M. Walker for $3,000, dated the 11th day of October, A. D. 1837, and drawing 12 per cent. interest. Said mortgage, among other lands, embraced the S. E. 29, 1 S., 7 W., in Adams county, and was duly executed and acknowledged by said Walker, and recorded

Williams v. Brunton *et al.*

in the Recorder's office of said Adams county, on the 14th day of July, A. D. 1840.   Afterwards, to wit, on the first day of April, 1842, said Walker conveyed said quarter section of land to the above named Thomas Brunton.   That afterwards, to wit, at the April term 1844, of the Adams Circuit Court, said King foreclosed his aforesaid mortgage for the sum of $3,708·70, and costs of suit, and subsequently sued out execution upon said judgment to cause said land to be sold; that, after said execution was so sued out, said Brunton called on this affiant, represented to him that he, said Brunton, had purchased said land from said Walker after the execution of the mortgage aforesaid; had taken possession of it under his said purchase, and made improvements thereon, and feared he would suffer loss by said mortgage, unless this affiant would delay the sale to enable him, said Brunton, to make some arrangement with said Walker. Affiant thereupon informed said Brunton that he would not sell said piece of land until he had disposed of all the other property embraced in such mortgage; and said Brunton, at the same time, agreed that he would neither do, suffer or permit any thing to encumber the title of the said land, but would, in good faith, hold the same subject to said mortgage; affiant thereupon caused said execution to be returned without having said land sold."   It then proceeds to state the commencement of this suit and the judgment, as before stated; that Brunton gave no notice to affiant of said suit; that he had no knowledge of it till after said judgment was entered; that he believed Brunton kept from him and Mr. Bushnell all knowledge of it designedly, to prevent them applying to defend the same; that King lives in Georgia; has never been in Illinois, and does not know the foregoing facts; that affiant and his partner are the attorneys of King, and authorized to manage and attend to his interests herein; that said mortgage has not been satisfied, &c.   It concludes by praying that judgment be set aside, new trial granted, and that said King might be, as defendant in the place of said Brunton, allowed to defend jointly with him, or to use his name for the purpose of defence.   This motion was allowed

by the Court, and the said King was allowed to defend the suit, and to plead to the declaration in the name of Brunton, and also in the name of himself; whereupon he pleaded accordingly. The plaintiff excepted to the opinion of the Court. Afterwards on the 1st day of October, 1846, it was ordered on defendant's motion, that the plaintiff join issue on said pleas, which the plaintiff in open Court declined doing. A jury was then impaneled who rendered a verdict of not guilty, whereupon judgment was entered against the plaintiff, who has appealed from this judgment to this Court.

Two errors are assigned upon this record:

1st. The Court erred in setting aside the judgment against the defendant, Brunton, and in granting a new trial, and permitting the said King to defend the action.

2d. The Court erred in impaneling a jury to try an issue where none was joined, and in entering judgment upon the verdict.

Under the first assignment of error, the appellant's counsel makes the following points:

1. There was no privity between King and Brunton, either of contract or of title;

2. If there was privity whilst the mortgage was in force, it ceased upon foreclosure, the mortgage having become extinguished and merged in the decree;

3. The affidavit upon which the motion was founded shows no sufficient reason for setting aside the judgment, it neither averring that they had title, nor denying that plaintiff had title, nor making any pretence of collusion between plaintiff and defendant; and

4. Allowing that King had shown himself entitled to defend, yet the judgment against Brunton ought to have stood.

In regard to the first point presented, it is a well established rule, that in an action of ejectment, the landlord may appear and defend the cause in the name of the tenant, or in his own name, and, also, that where a tenant, from negligence or fraud, has omitted to appear himself, or to give the landlord the necessary notice, the Courts will set aside a judgment by default against the tenant, upon proper affidavit

Williams *v.* Brunton *et al.*

being made by the landlord.   This rule of practice, adopted in the English Courts at an early period, has obtained express legislative sanction, by Statute 11 Geo. I, Ch. 19, § 13, in that country, and by similar Statutes passed in many States of the Union.   It has been expressly recognized by this Court, in the case of *Thompson* v. *Schuyler*, 2 Gilm. 271. Some difficulty, however, has arisen respecting the meaning of the word "landlord," and as to what persons may be considered as occupying the relation of landlord for the purposes of claiming this right of defence.   Lord Mansfield, in the case of *Fairclaim* v. *Shamtitle*, (Burr. 1290,) has given a very luminous exposition regarding the proper construction of the word "landlord," which is given in full in Adams on Ejectment, 258.   The rule, stated more briefly, amounts to this: that a person, claiming to be let in to defend in ejectment, must show his title is *connected to* and *consistent with* the possession of the occupant.   1 Bibb, 128; 1 Wend. 316.

Now, in the present case, it is manifest that the title of King is connected to and consistent with the title of Brunton. Walker, as appears from the affidavit of O. H. Browning, the attorney of King, on the 11th day of October, 1837, had executed a mortgage, embracing the land in question, to said King, which was recorded on the 14th of July, 1840. Subsequently, on the 1st of April, 1842, Walker conveyed the said land to defendant, Brunton.   Both, therefore, claim under Walker, the one the legal estate, the other in fact the equity of redemption only.   Their respective titles, then, are perfectly consistent.   After the condition broken, King, the mortgagee, had an undoubted right to enter as against Walker, and also against his assignee, Brunton.   In contemplation of law, Brunton was King's tenant at sufferance, or at least sustained towards him the peculiar relation which exists between the mortgagor and mortgagee.   King could have succeeded in obtaining possession against Walker or Brunton without difficulty, as neither of them could have disputed his title, while, in a controversy with the plaintiff, Williams, or with any other stranger, he would have had to

show title in Walker. He was, then, much interested in occupying the position of defendant.

It would not be difficult to show that, besides a privity in interest between King and Brunton, there existed also a privity of contract between them, but being clear on the first point, we refrain from enlarging on this last.

There are numerous decisions in support of the doctrine, that a mortgagee in or out of possession may be permitted to defend with the tenant in possession, to a few of which I will refer.

In 11 Johns. 407, *Jackson* v. *Stiles,* it was decided that a mortgagee *in possession* may be let in to defend in an action of ejectment. In 8 T. R. 645.,*Doe d. Tilyard* v. *Cooper,* a case where it did not appear that the mortgagee had previously received any rents, it was held that a mortgagee may be made defendant with the mortgagor. In *Doe d. Pearson,* 6 Bing. 613, a mortgagee was not permitted to defend, on the ground that he did not appear to have any interest in the result of that particular suit. In 17 Johns. 112, *Jackson d. Clark* v. *Babcock,* it was decided that the assignee of a mortgagee may be let in to defend. I also refer generally to 1 Pow. Mortg. 203, note G., and Adams on Ejectment, 255, 261.

It is said, however, that the relation previously existing between King and Brunton ceased, a judgment of foreclosure having been obtained by King. It is true that a judgment or decree may, for some purposes, be considered as an extinction of the original cause of action; for instance, for the purpose of regulating the interest on money to which a party is entitled before final satisfaction of the debt, as was the case in 3 Scam. 263, to which authority the appellant has directed our attention. But it is equally true, that for many other purposes, as for the ascertaining of priority of liens for instance, the principle of extinction or merger finds no application. It is in our opinion a total misapprehension of the doctrine on mortgages, to contend that a mortgagee who, instead of foreclosing strictly, which would at once have given him the indefeasible legal estate, applies for a sale of

the lands so as to have his debt satisfied and not more, the mortgagor being entitled to the surplus, if any, and who obtains a judgment or a decree, should thereby wholly lose the benefits of the title which he had by the mortgage. We consider a judgment or decree, and a subsequent purchase and obtaining of deed for the land from the Master or sheriff, as being connected with and as being in aid of his original title. A subsequent title so obtained is clearly consistent with the first title. It is hardly necessary to refer to authorities in support of this proposition. The case cited by the counsel for appellees, *Den* v. *Stockton*, 7 Halst. 322, we consider perfectly in point. For the general doctrine of merger, 3 Cowen, 79, 11 Ohio, 252, 2 Johns. 20, 1 Hill's (N. Y.) R. 107, 2 Cowen, 284, may be cited.

Passing to the next point under the first assignment of error, that the affidavit was insufficient, as it neither avers that King had title or Williams has none, and as it does not pretend to charge collusion between the plaintiff and the defendant Brunton, we are of opinion that the objection is not well founded. Our statute concerning the action of ejectment does not specially provide for cases of landlords and tenants and other persons interested applying to be let in to defend, but speaks of cases only where the party, his assigns, or those claiming under him move to set aside defaults. Where the statute is silent, the practice and rules of the Common Law are applicable, and lest there should be any doubt upon this point, the first section of the Act, Rev. Stat. ch. 36, (Laws of 1839, —,) which provides "that the action of ejectment shall be retained, and may be brought in the cases and the manner heretofore accustomed, subject to the provisions hereinafter contained." Of course all the incidents to this action at Common Law, and the mode of proceeding throughout is retained, except where the statute makes an express alteration. The affidavit clearly shows that King had some title, which he was interested to protect; it would be hard, indeed, if any person could be required to swear that he had a title to the land paramount to any other that might be set up. It would have been equally improper

to have required him to state that Williams had none, as he is not presumed, before a legal investigation has settled it, to know a stranger's title. The affidavit also shows sufficient facts to induce the belief that Brunton had acted in bad faith, which was sufficient to authorize the Court to permit King to come in as a co-defendant.

As to the last point made under the first assignment, that the judgment as to Brunton ought to have stood, we deem it also untenable. It appears from an examination of the subject, that under the English practice before the Statute of George I., which has been already adverted to, the landlord who was admitted to defend, had a right to have the judgment against the casual ejector set aside. Ad. Eject. 255, 257. The statute afterwards provided that in such cases Courts may stay the execution against the casual ejector. We think that one or the other may be done in the discretion of the Court. We cannot perceive how, in any view of the case, the plaintiff can be prejudiced, as we have before seen that the co-defendant cannot defend himself under a title inconsistent with that of the original defendant. In fact, he must stand substantially upon the same title as the latter does. If he succeed against the plaintiff, it is also a victory of the original defendant. The stay of execution must then remain permanent and the judgment can have no force and effect. If the co-defendant fails, the title of the original defendant falls with it, and the judgment equally concludes both.

The decision of the Court was correct in another view of the matter. King, being by law a proper *defendant,* or party, as shown before, and having become identified with Brunton, he had a right, at any time within a year, to have the judgment vacated, upon payment of costs, under the express provision of our Statute. Rev. Stat. Ch. 36, § 31. The objection under the second assignment of error, however, is well taken. After King had been permitted to plead for Brunton and for himself, the plaintiff failed to join issue on the pleas. The defendant's counsel then moved the Court to order the plaintiff to join issue, which motion

was allowed. The plaintiff, in proper person, declined in Court to join issue, notwithstanding which a jury was sworn and a verdict rendered against plaintiff. The record, it is true, is silent as to whether the plaintiff took any further action in the case or not. If he had, then the mere omission of adding what is technically called the *similiter* would be no ground of error. It would be his own negligence, of which he could not complain. *Waters* v. *Simpson*, 2 Gilm. 570. But it is an irresistible inference from this record, that he did not wish to prosecute his suit any farther. His declining to take issue on pleas which presented a full defence to his action amounts to a discontinuance. The Court ought to have dismissed the case for want of prosecution. This is the correct practice, as dictated by the reason of the thing, and laid down in the books. See Stephen on Pl. 109; 1 Tidd, 472; 2 do. 718, 727, 925. For this error, in trying the case by jury, and receiving a verdict against the plaintiff, when he had virtually discontinued his case, the judgment below must be reversed. As it is manifest, however, from the record, what judgment ought to have been rendered below, this Court will give such judgment here, without remanding the cause.

The judgment of the Circuit Court is reversed, with the costs of this appeal, and the plaintiff below having failed to prosecute his suit, it is ordered and adjudged that the said suit be dismissed, and that the defendants recover from and of the said plaintiff their costs in this behalf expended in the Court below, and have execution thereof.

*Judgment reversed.*