THE MALLEABLE IRON RANGE COMPANY, Appellee, vs.
CHARLES M. PUSEY, Appellant.

*Opinion filed February 16, 1910.*

1. CORPORATIONS—*misnomer of the corporation in contract of guaranty is not fatal.* Misnomer of the corporation with whom a contract of guaranty is made does not invalidate the contract, and the corporation may recover thereon upon proper averment and proof that it was, in fact, the corporation intended to be indemnified by the contract but that it was misnamed in the contract by inadvertence or otherwise.

2. PLEADING—*amendment giving correct name of corporation plaintiff is proper.* Where the declaration in an action on a contract of guaranty to a corporation incorrectly states the corporate name of the plaintiff it is not error to allow an amendment giving its correct name, even though the original declaration followed the contract in that respect.

3. SAME—*effect of filing amended declaration against one defendant, only.* Filing an amended declaration against one, only, of the two defendants made parties to the original declaration in an action on a contract of guaranty is a discontinuance of the suit as to the other defendant.

4. CONTRACTS—*when contract of guaranty is a continuing one.* A contract which guarantees to a manufacturing corporation the payment, up to a specified amount, of any indebtedness for goods theretofore purchased or thereafter to be purchased by a customer is a continuing guaranty limiting the guarantor's liability to the amount specified but not limiting the credit to be extended to the customer, and subsequent payments by the customer do not extinguish *pro tanto* the guarantor's liability for the amount due when the customer's account is closed.

5. SAME—*when evidence tending to show counter-claim is not admissible.* In an action by a manufacturing corporation on a contract guaranteeing the indebtedness of a customer for goods purchased, the guarantor cannot introduce evidence to show that the corporation failed to perform its contract, where the evidence shows that all matters of controversy between the corporation and the customer were settled before suit was brought and that nothing was due him.

APPEAL from the Appellate Court for the First District;—heard in that court on appeal from the Superior Court of Cook county; the Hon. WILLIAM H. MCSURELY, Judge, presiding.

Francis H. Buzzacott, on the 19th day of November, 1901, entered into a contract in writing with the Dauntless Manufacturing Company, a Wisconsin corporation doing business at Beaver Dam, Wisconsin, to manufacture army ranges and to deliver them to Buzzacott, f. o. b. cars at Beaver Dam, for $20 each. On February 2, 1902, the name of the Dauntless Manufacturing Company was changed to the Malleable Iron Range Company, in accordance with the statute of Wisconsin. The Dauntless Manufacturing Company and the Malleable Iron Range Company manufactured and delivered ranges to Buzzacott under the contract of November 19, 1901, and on June 17, 1902, there was due the Malleable Iron Range Company for ranges delivered to Buzzacott under said contract the sum of $1800, and on that date Francis H. Buzzacott and Charles M. Pusey executed and delivered to the Malleable Iron Range Company an instrument in writing, which reads as follows:

"For and in consideration of the sum of one dollar to each of us in hand paid, and in consideration of the granting of credit and shipment of goods by the Beaver Dam Malleable Iron Range Company, of Beaver Dam, Wisconsin, a corporation, to Francis H. Buzzacott, north-east corner Seventy-fourth street and Storms avenue, Chicago, Illinois, we, Chas. M. Pusey, of Chicago, Illinois, and Francis H. Buzzacott, of Chicago, Illinois, for ourselves and for our heirs, executors and administrators and assigns, do hereby jointly and severally guarantee to the said Beaver Dam Malleable Iron Range Company, their heirs, executors, administrators and assigns, the payment of any and all indebtedness now due or hereafter to become due to the said Beaver Dam Malleable Iron Company, their heirs, executors, administrators or assigns, from the said Francis H. Buzzacott, for goods heretofore purchased, shipped or ordered from the said Beaver Dam Malleable Iron Company by the said Francis H. Buzzacott, or for any goods which may thus be purchased, shipped or ordered any time in the future.

"It is hereby understood and agreed that the undersigned shall not be liable under this guaranty for an amount to exceed three thousand two hundred dollars ($3200.)

"The undersigned hereby waive notice of the acceptance of this guaranty and of the amount of indebtedness now existing or which

hereafter exist, from time to time, from the said Francis H. Buzzacott to the said Beaver Dam Malleable Iron Range Company.

"In witness whereof we have affixed our hands and seals at the city of Chicago, State of Illinois, this 17th day of June, 1902.

FRANCIS H. BUZZACOTT, (Seal.)

CHAS. M. PUSEY.          (Seal.)

In presence of James Davis, Tillie Buzzacott."

This is the contract sued on in this case. After the execution and delivery of said guaranty contract the Malleable Iron Range Company continued to manufacture and deliver ranges to Buzzacott or to his order, and on the 12th day of August, 1902, Buzzacott was indebted to the Malleable Iron Range Company in the sum of about $1700 and the Malleable Iron Range Company then had in course of construction for Buzzacott one hundred ranges, and under the terms of the contract of November 19 Buzzacott was obligated to receive and pay for, within the next three months, one hundred and seventy ranges in addition to the one hundred ranges then in the course of construction, and on that day he wrote to the Malleable Iron Range Company the following letter:

"LOUISVILLE, KY., *Aug. 12, 1902.*

"*Malleable Iron Range Co., Beaver Dam, Wis.*

"GENTLEMEN—I enclose herewith a letter which speaks for itself. I am at Jeffersonville, making repairs on these ranges, and will do my best to off-set the broken grates and to place these ranges in condition. In view, however, of these facts it will be well to request you to kindly make and put into shape the one hundred ranges you are now working on, and in view of the circumstances will ask you to kindly cancel my contract with you for balance of ranges. I will pay you for all ranges made to date in full and suffer the expense of loss from breakage myself, asking only that you turn over to me, at cost, all castings that you have on hand or in the sand, together with the patterns, for cash, to date, otherwise I must hold you responsible for the loss on deliveries that is inflicted on me by the quartermaster's department and the entire cost of this breakage, freight and general repairs. Any castings that you have on hand will be taken at cost so as to clean up matters, so as I can have these ranges built elsewhere from the castings in a way they won't break.

"I will thank you for honest consideration and will ask you to write me in full to the above address. I want to settle with you

in full and will assume the loss if you will release the terms of my contract on my accepting, at cost, castings on hand, which, in my estimation, is getting rid of a bad job without loss on your part.

"Regretting the matter, I am very respectfully,

BUZZACOTT."

To this letter the Malleable Iron Range Company, by A. C. Terrell, replied as follows:

"BEAVER DAM, WIS., *Aug. 14, 1902.*
"*Buzzacott, Louisville, Ky.:*

"DEAR SIR—Your letter of the 12th at hand, and in reply will say that the terms you speak of for settlement is perfectly satisfactory to us if agreeable to you, but in view of the fact that there was a kick coming on the fifty-one ranges shipped last lot we will hold this lot of one hundred until next week, and we want you to come to Beaver Dam and inspect every range before we load it, and if there is anything that is not satisfactory we are only too willing to make it so. It is much better to fix it up here than to cause you the annoyance of going to Louisville and going over it there. We are at a loss to understand what can be the matter with any of these ranges, as every one of them left our place in perfect condition. Kindly let us know just what day you will be here, so that we can get everything in shape so that it will not take more than one day of your time in Beaver Dam.

"Respectfully,     A. C. TERRELL.

"P. S.—We have about $800 worth of sheet iron, or one carload, on hand that is just the right size for your ranges, which we would gladly dispose of at the market price. We would like to have you take this, as it cuts to disadvantage in our work.

A. C. T."

Subsequent to the date of these letters the Malleable Iron Range Company delivered to Buzzacott, or his order, the one hundred ranges then in process of construction and the castings and patterns mentioned in said letters, and on August 30, 1902, Francis H. Buzzacott owed the Malleable Iron Range Company upward of $3200, and demand having been made upon Pusey for payment to the extent of $3200, and payment having been refused, an action of debt was commenced by the Beaver Dam Malleable Iron Range Company, a corporation, against Buzzacott and Pusey, in the superior court of Cook county. Buzzacott and Pusey were duly served with process and each appeared and

pleaded to the merits of the action.    Before the case was reached for trial, and on the 28th day of April, 1905, an order was entered in the following terms: "On motion of plaintiff's attorney it is ordered that all papers and proceedings in said cause be and are hereby amended by changing the title of the plaintiff to read 'Malleable Iron Range Company,' and by changing the form of action herein to assumpsit and by increasing the *ad damnum* herein to $4000, and leave be and is hereby given the plaintiff to file an amended declaration herein instanter, and it is ordered that defendant Charles M. Pusey be and is hereby required to plead to said amended declaration within ten days from this date."    On the same day the Malleable Iron Range Company filed a new declaration, in which new declaration the Malleable Iron Range Company, as plaintiff, declared against Charles M. Pusey alone, Francis H. Buzzacott being omitted as a defendant, and in which declaration it was averred that the defendant Pusey, with Francis H. Buzzacott, jointly and severally guaranteed to the plaintiff, the Malleable Iron Range Company, "under the name and style of the Beaver Dam Malleable Iron Range Company," the payment of any and all indebtedness then due or thereafter to become due the plaintiff from said Francis H. Buzzacott in consequence of the sale and delivery to Buzzacott of army ranges, etc.; and thereafter, on May 9, 1905, an order was entered by stipulation, extending the time of Pusey to plead to the amended declaration, and on May 11, 1905, Pusey filed pleas consisting of the general issue, and a number of special pleas to the merits and in bar of the action. Later, and prior to the trial, Pusey filed other amended or additional pleas in bar.    To certain of these pleas the plaintiff demurred, and most of the demurrers having been sustained, the defendant elected to stand by his pleas, and on the case coming on for trial, proof was made by the plaintiff of the incorporation of the Dauntless Manufacturing Company; of the execution by Buzzacott of the contract

of November 19, 1901, with that company; of the change
of name from the Dauntless Manufacturing Company to
the Malleable Iron Range Company; of the delivery and
shipment of the ranges by the Malleable Iron Range Com-
pany to Buzzacott or to his order and the execution of the
contract of guaranty by Buzzacott and Pusey; of the de-
fault in payment by Buzzacott, and of the notice of de-
fault to Pusey and demand of payment from Pusey and
of Pusey's failure to pay.   And the plaintiff also introduced
in evidence the letter of August 12, hereinbefore set out,
in which Buzzacott, in consideration of being released from
further performance of his contract and of the turning
over to him of certain castings and patterns at cost, prom-
ised to pay for all ranges made to that date in full, and to
release the plaintiff from any claim for damages for any
failure by it to fully comply with its contract; and the
plaintiff further proved its release to Buzzacott of further
performance of his contract and of the turning over of the
patterns and castings at cost, and in addition proved that
the contract of guaranty was executed by its attorney and
was brought back to the company by its superintendent
after being signed by Pusey, and proof was made that at
the time of the execution of the contract of guaranty there
was no such corporation doing business in Beaver Dam,
Wisconsin, as the Beaver Dam Malleable Iron Range Com-
pany.   The plaintiff then rested, whereupon the defendant
offered to prove various defects in the ranges manufactured
by the plaintiff, which it was claimed caused certain loss
and damage to Buzzacott.   This evidence the court ex-
cluded, upon the ground that all controversies with respect
to defects in the ranges or damages suffered by Buzzacott
by reason of any such defects had been settled by the acts
and agreements of the contracting parties.   The defendant
offered no other evidence, whereupon the court, upon the
motion of the plaintiff, directed the jury to return a verdict
in favor of plaintiff for the sum of $4000, which amount

consisted of the $3200 due under the contract of guaranty, with legal interest thereon from the time of Pusey's default to the date of the verdict, which was done accordingly. Thereafter motions for a new trial and in arrest of judgment were made by the defendant and overruled, and judgment was entered on the verdict in favor of the plaintiff for $4000, from which judgment the defendant prosecuted an appeal to the Appellate Court for the First District, which court affirmed the judgment of the superior court, and a further appeal has been prosecuted to this court.

CHARLES A. PHELPS, for appellant:

The contract of guaranty was not admissible in evidence in support of plaintiff's cause of action, and parol evidence was not admissible to show that the Malleable Iron Range Company was a party thereto. *Grant* v. *Naylor,* 4 Cranch, 224; *Gayle* v. *Hudson,* 10 Ala. 116; *Smith* v. *Montgomery,* 3 Tex. 199; *Coleman* v. *Crumpler,* 13 N. C. 508; *Jackson* v. *Foster,* 12 Johns. 490; *Flournoy* v. *Mims,* 17 Ala. 36; *Crane Co.* v. *Specht,* 39 Neb. 123; *Allison* v. *Rutledge,* 13 Tenn. 193; *Sollee* v. *Meugy,* 12 S. C. 620; *Coan* v. *Patridge,* 98 N. Y. Supp. 570.

In the construction of a contract where the language is unequivocal although the parties may have failed to express their real intention, there is no room for construction and the legal effect of the agreement must be enforced. *Benjamin* v. *McConnell,* 4 Gilm. 536; *Schneider* v. *Sulzer,* 212 Ill. 87; *Hageman* v. *Holmes,* 179 id. 275; *Walker* v. *Tucker,* 70 id. 527; *Spence* v. *Huckins,* 208 id. 304; *Canterbury* v. *Miller,* 76 id. 355.

The Malleable Iron Range Company is not a party to the guaranty contract, and a guarantor is liable only to the person to whom he makes the guaranty. *Bank* v. *Diefendorf,* 90 Ill. 396.

The liability of a guarantor is not to be extended, by implication, beyond the terms of the contract. To the ex-

tent and in the manner and under the circumstances pointed out in his obligation he is bound, and no further. *Field v. Rawlings,* 1 Gilm. 582; *Mix v. Singleton,* 86 Ill. 194; *Sterling v. Wolf,* 163 id. 467.

The terms of the contract being plain and unambiguous as to who was intended to be bound by it, cannot be varied, contradicted or enlarged, as extrinsic evidence can only be introduced to explain the intention of the parties to a written instrument when from the instrument itself there is doubt as to the intention of the parties who should be bound thereby. *Vail v. Life Ins. Co.* 192 Ill. 567.

If the admission of counsel for plaintiff and the testimony of the witness McClure that there was no such corporation as the Beaver Dam Malleable Iron Range Company was competent and binding, then the superior court was, and this court is, without jurisdiction of the parties and subject matter, as there was no plaintiff and therefore no suit. *Mexican Mill v. Silver Mining Co.* 4 Nev. 40; *Life Ins. Co. v. Presbyterian Church,* 111 Ga. 677; 1 Ency. of Pl. & Pr. 539.

If the guaranty contract was with the Malleable Iron Range Company, then, at the time of the execution of the contract, the liability to the extent of $1818.91 out of the $3200 became fixed. It was an absolute guaranty as to that amount at least, and when Buzzacott paid the same the contract was satisfied *pro tanto. Dillman v. Nadelhoffer,* 160 Ill. 121.

PECKHAM, BROWN, PACKARD & WALSH, for appellee:

Though the contract of guaranty did not state the corporate name of the plaintiff with precise accuracy, it was not, therefore, a nullity. The plaintiff could recover on it upon proper averment and proof that it was the party intended to be guaranteed. *Peake v. Railroad Co.* 18 Ill. 88; 1 Thompson on Corp. sec. 294; *Distilling Co. v. Brant,* 69 Ill. 658; *Chadsey v. McCreery,* 27 id. 253; *Board of Edu-*

*cation* v. *Greenebaum,* 39 id. 609; *Clement* v. *Lathrop,* 18 Fed. Rep. 885; *African Society* v. *Varick,* 13 Johns. 38; *Building Ass'n* v. *Martin,* 13 N. J. Eq. 427; 7 Am. & Eng. Ency. of Law, (2d ed.) 688; 21 id. 1118.

The amending order making a change in the name of the plaintiff was a proper one and did not defeat the action. Hurd's Stat. 1905, sec. 23, p. 1534; id. sec. 1, p. 142; id. sec. 6, p. 142; *Smith* v. *Railroad Co.* 30 Ala. 650; *Building Ass'n* v. *Martin,* 13 N. J. Eq. 427.

The filing of an amended declaration in assumpsit declaring against ,Pusey, alone, operated as a dismissal of the suit as to Buzzacott. *Black* v. *Womer,* 100 Ill. 328; *Mac-Lachlan* v. *Pease,* 171 id. 527; *Hotel Co.* v. *Pinkerton,* 217 id. 61; *Lockwood* v. *Doane,* 107 id. 235.

The dismissal of Buzzacott from the suit was proper, and after such dismissal the plaintiff was entitled to proceed to verdict and· final judgment against Pusey alone. *Kaspar* v. *People,* 230 Ill. 342; *Hotel Co.* v. *Pinkerton,* 217 id. 61; *Insurance Co.* v. *People,* 209 id. 42; *Construction Co.* v. *Farson & Co.* 199 id. 398; *Life Ins. Co.* v. *Hickson,* 197 id. 117.

The letter of Buzzacott agreeing to pay the plaintiff for all ranges delivered in consideration of being released from the performance of his contract was effectual, and made inadmissible any evidence that the ranges were defective or that there was a set-off in favor of Buzzacott. *Rice* v. *Filene,* 88 Mass. 230.

The contract of guaranty was a continuing one. The limitation was a limitation, not upon the credit to be extended to Buzzacott, but upon the liability of·Pusey. Consequently, the guaranty was not discharged by any payment by Buzzacott if at the termination of his dealings with the Malleable Iron Range Company there remained an indebtedness due from him to it. *Taussig* v. *Reid,* 145 Ill. 488; *McShane Co.* v. *Padian,* 142 N. Y. 207; *Bent* v. *Hartshorn,* 1 Metc. 24.

Mr. JUSTICE HAND delivered the opinion of the court:

The contract of guaranty sued upon, upon its face appears to have been made by Francis H. Buzzacott and Charles M. Pusey with "the Beaver Dam Malleable Iron Range Company, of Beaver Dam, Wisconsin, a corporation," and the first contention made by the appellant is, that it was error to permit proof to be made that it was the intention of Pusey, by said contract of guaranty, to guarantee a debt of Buzzacott to the Malleable Iron Range Company and to permit a recovery in favor of the Malleable Iron Range Company on said contract of guaranty against Pusey. The declaration averred that the defendant and Buzzacott, by an instrument in writing signed and sealed by each of them, did, jointly and severally, guarantee to the plaintiff, under the name and style of "The Beaver Dam Malleable Iron Range Company," the payment to the plaintiff of any and all indebtedness then due or thereafter to become due to the plaintiff for goods theretofore purchased, shipped or ordered from the plaintiff by said Buzzacott, and for any goods which might then be purchased, shipped or ordered at any time in the future, provided, however, that said guarantors should not be liable on said guaranty for any amount to exceed $3200, and the proof fully sustained the averments of the declaration that the words "The Beaver Dam," were by inadvertence, or otherwise, inserted in the contract of guaranty before the corporate name of the plaintiff, and the question to be determined is, was it proper to show, by evidence *aliunde* the contract, that, as a matter of fact, the contract of guaranty was made for the protection of the plaintiff? While there is some apparent conflict in the authorities upon this question, we think it was proper to admit such proof. Mr. Thompson, in his Commentaries on the Law of Corporations, (vol. 1, sec. 294,) says: "There is a general concurrence of modern authority to the effect that 'a misnomer or variation from the precise name of the corporation in a

grant or obligation by or to it is not material if the identity of the corporation is unmistakable, either from the face of the instrument or from the averments and proof,' " and the rule announced by Judge Thompson has been applied by this court in numerous cases.

The case of *Peake* v. *Wabash Railroad Co.* 18 Ill. 88, was an action of assumpsit brought to recover for moneys due upon certain subscriptions to the capital stock of the Wabash Railroad Company. The corporate name of the railroad company was "The Wabash Railroad Company," but the terms of the subscription were, that the subscribers should severally pay the amount of their subscriptions, as calls should be made by order of the company, to the president, directors and company of "the Wabash Valley Railroad Company." The declaration contained a count in *indebitatus assumpsit* for moneys due on certain installments of stock subscribed by the defendant in the Wabash Railroad Company, and the ordinary common counts. In the course of the opinion (page 90) the court said: "Were the contract of subscription specially declared on, it would be necessary, by explanatory averment, to avoid the apparent variance between the contract and the name of the plaintiff, and to show that the contract was made with the plaintiff by the name therein used. And the counts being general, some explanatory proof would, perhaps, be equally necessary to establish a contract with the plaintiff or subscription to the stock in this company, although by a name variant from the legal name. Instruments in writing are not void because made to a party by a wrong name, and any misnomer or apparent variance may be reconciled and explained, in pleading, by averment, and avoided, in effect, by proof."

In *Chadsey* v. *McCreery,* 27 Ill. 253, on page 254, it was said: "In 1 Kyd, 237, it is said, as the name of a corporation frequently consists of several words, the transposition, interpolation, omission or alteration of some of

them may make no essential difference of their sense. It is held, in a devise to a corporation, if the words, though the name be entirely mistaken, show that the testator could only mean a particular corporation, it is sufficient, as, for instance, a devise to the inhabitants of the South Parish may be enjoyed by the inhabitants of the First Parish, 'The First Parish' being the legal name.—3 Pick. 237."

In *Board of Education* v. *Greenebaum & Sons,* 39 Ill. 609, Greenebaum & Sons filed a petition against the board of education of the State of Illinois to enforce a mechanic's lien. The petition states that the plaintiffs entered into a written contract with the defendants by the name and style of "The State Board of Education of Illinois." The proper name of the board was "The Board of Education of the State of Illinois." Objection was made to a recovery upon this ground. The court, in overruling the objection, said (p. 614): "The proper name of this corporation is 'The Board of Education of the State of Illinois.' (Scates' Comp. 425.) In the contract words are transposed, but the name and style remain substantially the same. The same words are embraced in both names. It is a settled principle that the transposition, interpolation, omission or alteration of some of the words going to make up the name of a corporation is not material if it makes no essential difference in their sense. (Angell & Ames on Corp. 77.) In New Hampshire it was held, when a promissory note was given to the president, directors and company of, instead of to, the Newport Mechanics' Manufacturing Company, which was the true name of the corporation to which the note was designed to be given, that the variance was not such as to preclude a recovery in the name of the corporation. (*Newport Mec. Manf. Co.* v. *Starbird,* 10 N. H. 123; 1 Kyd on Corp. 237; Bacon's Abr. title Corporation, c. 2.) So this court held in *Chadsey* v. *McCreery,* 27 Ill. 253, that the transposition, alteration or omission of some words in the name of a corpora-

tion consisting of several words was immaterial if it was evident what corporation was intended. The suit is brought against the corporation by its true name, with an averment . that the contract was executed by the name used in it. This is the usual and formal mode of declaring on such contracts. It is a familiar principle, when a deed is made to a corporation by a name varying from the true name, the plaintiffs may sue in their true name and aver in the declaration that the defendants made the deed to them by the name mentioned in the deed.—*African Society* v. *Varick*, 13 Johns. 38."

We are of the opinion the trial court did not err in admitting proof to show that the contract of guaranty was made with the plaintiff under the name of "The Beaver Dam Malleable Iron Range Company."

It is next contended by the appellant that the court erred in permitting the amendment whereby the title of the case was changed by substituting the Malleable Iron Range Company as plaintiff, the theory of the appellant being, that prior to the amendment, as there was no such corporation as the Beaver Dam Malleable Iron Range Company, there was no plaintiff, and there was therefore nothing to amend by, and hence the amendment could not properly be permitted to be made. The statute (Practice act, sec. 23,) provides: "At any time before final judgment in a civil suit, amendments may be allowed on such terms as are just and reasonable, introducing any party necessary to be joined as plaintiff or defendant, discontinuing as to any joint plaintiff or joint defendant, changing the form of the action, and in any matter, either of form or substance, in any process, pleading or proceeding, which may enable the plaintiff to sustain the action for the claim for which it was intended to be brought, or the defendant to make a legal defense." And the statute on amendments and jeofails (sec. 1) provides: "That the court in which an action is pending, shall have power to permit amendments in any

process, pleading or proceeding in such action, either in form or substance, for the furtherance of justice, on such terms as shall be just, at any time before judgment rendered therein." At the time the suit was commenced it was attempted to state the name of the plaintiff correctly but the name of the plaintiff was stated incorrectly. There was, however, a plaintiff named in the suit, although the name used was not the correct name of the plaintiff. It was proper, under the statute, to permit any amendment, either in form or in substance, in any process or pleading which would enable the plaintiff to sustain the action for the claim for which it was intended to be brought. The only amendment sought to be made was to correct the name of the plaintiff, as there can be no pretense upon this record but that the suit was brought by the Malleable Iron Range Company and that the suit was based upon a contract of guaranty signed by Pusey. We think the amendment was in furtherance of justice and that it was properly permitted to be made.

It is also contended that the court erred in declining to permit the appellant to make proof that the plaintiff had failed to perform its contract with Buzzacott. The letters hereinbefore set out in this opinion show that all matters in difference between the plaintiff and Buzzacott had been settled and adjusted long before this suit was commenced and that there was nothing due Buzzacott from the plaintiff. The court did not, therefore, err in refusing to admit such proof.

The case of *Rice v. Filene,* 88 Mass. 230, in principle, upon this proposition, is like the case at bar. That was a suit upon a contract of guaranty, by which the defendant guaranteed the payment of certain goods sold by the plaintiff to his brother. The vendee made various objections to the goods, complained of delay in shipment and finally returned them to the plaintiff. Later on, the plaintiff and the vendee agreed that the vendee should waive his objec-

tions and receive and pay for the goods upon the plaintiff allowing him a discount of ten per cent. It was held that these acts of the parties did not release the defendant upon his guaranty. The court, on page 235, said: "The objection that under the declaration in the present case the subsequent agreement as to the receipt of the goods upon the deduction of ten per cent was fatal to the right of the plaintiff to maintain the present action is not sustained. The sale of goods, the payment of which was guaranteed by the defendant, is the sale of goods bargained for on the 10th of October. The liability was for the goods then ordered. The subsequent acts of these parties as to an abatement in price were based upon that sale and the bill of parcels was rendered as of that date. The delay in forwarding the goods, and the fact that the time of credit was understood by the parties to be computed from the 10th of October, were distinctly alluded to by the vendee in his letter to the plaintiff, as well as the quality of some of the goods, as matters of complaint for which he claimed the right to repudiate the contract, but he waived the right so to do upon the allowance of ten per cent discount from the prices stated in the bill."

It is also claimed by the appellant that as Buzzacott had bought and paid for more than $3200 worth of ranges subsequent to the date of the contract of guaranty appellant's obligation was fulfilled and he could not be held therefor upon said contract of guaranty. We think it manifest that the contract of guaranty was a continuing obligation, and that the limitation contained therein was not a limitation upon the credit to be extended to Buzzacott by the plaintiff but a limitation upon the liability of Pusey. The contract provided Pusey was not to be liable for an amount to exceed $3200, and not the amount of credit which should be extended to Buzzacott by the plaintiff.

The case of *Taussig* v. *Reid,* 145 Ill. 488, is an authority in point. That was an action on a guaranty, under

the terms of which the guarantors guaranteed the prompt payment by the principal of all indebtedness for goods purchased or which might thereafter be purchased, to the amount of $1500. After the execution of the guaranty, Reid, Murdoch & Fischer, the parties guaranteed, proceeded to sell goods on credit to the principal. The indebtedness varied from time to time. On November 23, 1887, when the account was closed, it amounted to $2714.96. The principal failed on November 24. The argument was made that the guarantors were discharged because after the execution of the guaranty the principal made default in payment in excess of $1500, of which no notice was given to the guarantors. The court, as to this point, said (p. 496) : "The position of appellants is untenable. They guaranteed the prompt payment, at maturity, of any indebtedness owing by Mrs. Zuckerman to plaintiffs for goods purchased, or thereafter to be purchased of them, to the amount of $1500. This amount stated in the guaranty was a limitation upon the liability of the guarantors and not a limitation upon the credit to be extended to Mrs. Zuckerman. It was, as we have seen, a continuing guaranty, and plainly contemplated that payments made or indebtedness otherwise settled by Mrs. Zuckerman should not in anywise affect their liability for indebtedness incurred by her for goods purchased and not paid for at maturity. The contract of guaranty looked to a future course of dealing for an indefinite time,—that is, a succession of credits was to be extended, and the guarantors undertook to be liable to the extent of $1500 for any indebtedness contracted in the course of such dealings and not paid by Mrs. Zuckerman at maturity. * * * Taking the language of this instrument and construing it in the light of the circumstances surrounding, it seems clear that it was intended that Mrs. Zuckerman should have credit with the plaintiffs and that appellants would be liable for any balance that might remain unpaid at maturity, at any time during the continu-

ance of the guaranty,—that is, that it was intended to give her credit with the plaintiffs to the amount of $1500 until the guaranty should be revoked."

A number of appellant's contentions urged as grounds of reversal are based upon the assumption that Francis H. Buzzacott remained a party defendant up to the time of the final judgment. This assumption is not correct: The filing of the amended declaration was a discontinuance of the suit as against Buzzacott. *Black* v. *Womer*, 100 Ill. 328; *MacLachlan* v. *Pease*, 171 id. 527; *Kaspar* v. *People*, 230 id. 342.

We have examined this record with care and have found no reversible error therein. The judgment of the Appellate Court will therefore be affirmed.

*Judgment affirmed.*