J. J. ANZALONE, d/b/a S. ANZALONE & COMPANY *et al.*, Plaintiffs-Appellees, *v.* IRVING DURCHSLAG, d/b/a GENERAL PAINTING CONTRACTORS COMPANY *et al.*, Defendant-Appellants.

(No. 54698;

First District—August 26, 1971.

Marvin H. Glick and Arthur W. Baum, of Chicago, for appellants.

Anthony M. Anzalone, of Chicago, for appellees.

Mr. JUSTICE McGLOON delivered the opinion of the court:

Defendants appeal a judgment entered against them below in the amount of $3,187 for merchandise allegedly ordered from plaintiff. Defendants assert that they were improperly held personally liable for the debt of General Painting Contractors which was not a partnership as found in the trial court, but a corporation. They seek to establish this fact by arguing alternatively that either General Painting Contractors was a division of Chicago Camcorp, Inc. (a valid Illinois corporation) and, therefore, entitled to share in its corporate existence, or that plaintiff should be estopped from denying General Painting Contractors' corporate existence because plaintiff dealt with General Painting Contractors as if it were a valid Illinois corporation.

More specifically they argue: (1) A corporation (*i.e.*, Chicago Camcorp, Inc.) may contract, acquire rights, or incur obligations in a fictitious or trade name (*i.e.*, General Painting Contractors.) (2) If the plaintiff intended to deal with the corporation (Chicago Camcorp), there is no liability on the officers and shareholders of the corporation. (3) If plaintiff contracted or otherwise dealt with an alleged corporation (General Painting Contractors) in such a way as to recognize its legal existence as a corporate body, he is thereby estopped to deny its corporate existence.

We affirm.

Joseph Anzalone, plaintiff, is in the business of selling paint, wallpaper, hardware and decorating equipment. Anzalone had known defendant Durchslag for twenty-five years, and, therefore, when Durchslag presented himself to Anzalone in early 1963 and informed him that he was a part of Chicago Camcorp, Inc., Anzalone decided to extend credit to the corporation on his goods. Chicago Camcorp, Inc. was originally a party to the action but was later taken out by reason of plaintiff's Amended Complaint. Ill. Rev. Stat. 1967, ch. 110, par. 46.

In April of 1964 Durchslag again appeared in Anzalone's place of business. Anzalone testified that Durchslag told him that "* * * he was going into this painting business big and he was going to form a new

company, General Painting Contractors, and he was hiring a new man * * *." Azalone expressed his reservations about the new employee, who had a very bad business reputation, to both Durchslag and Durchslag's associate (and co-defendant) Ryan. Nevertheless, as Anzalone put it, "As long as Mr. Durchslag was behind the whole situation and I had known him for so many years and his family and doing business with them, and always been paid, I went, just went along with them."

When asked the name of this "new company," Anzalone replied, "General Painting Contractors. They were changing the name from Chicago Camp Corps [sic] to General Painting Contractors, a division of that, or whatever * * *. I am positive that is what he termed it as in forming a new company."

From April of 1964 until September of the same year, painting supplies were purchased by and billed to General Painting Contractors Co., 209 North Des Plaines, except for a few billed to General Painting Contractors Co., Chicago Camcorp, Inc. Bills, when paid, were paid by checks, the stubs of which bore the notation "Chicago Camcorp, Inc."

September 15, 1964, Durchslag informed plaintiff that he was no longer with General Painting Contractors. When plaintiff inquired, "Who do I go to see for the money now?", Durchslag replied, "You will have to chase * * * Jack Richards. We sold the business to him, or Jack Ryan."

Irving Durchslag testified at trial that General Painting Contractors Co. was not a corporation, nor was it a partnership. Its members were those of Chicago Camcorp, and the name "General Painting" was created because it better informed the public of Chicago Camcorp's decorating service. General Painting Contractors Co. did not have a checking account, a tax return, employees, a social security number, or a bank account separate from those of Chicago Camcorp, Inc.

Having heard all of the testimony and having viewed all of the evidence, the trial court entered a judgment against Durchslag and Ryan.

Defendants first argue that Chicago Camcorp, Inc. could contract, acquire rights, or incur obligations in a fictitious or trade name. They offer as authority for this argument the case of *Malleable Iron Range Co. v. Pusey* (1910), 244 Ill. 184, 91 N.E. 51. This case, however, is inapposite to the point defendants stress, for it addresses itself to an instance where a corporation's name was improperly stated on a contract. The court held that such a misnomer would not invalidate the contract if it could be proven that the identity of the corporation in question was unmistakable and that the corporation was misnamed in the contract by inadvertence. Thus, parole evidence was admissible to establish the identity of the corporation.

▇▇ In Illinois a corporation has no legal right to use any name other than that under which it was organized, and use by a corporation of a name different from its legal corporate name is against the public policy of the State. (*Svenska Nat. Förbundeti Chicago v. Swedish Nat. Ass'n.*, (1917), 205 Ill.App. 428.) If Chicago Camcorp, Inc. found that its legal name presented a consumer identification problem, it could have changed its name pursuant to the Corporation Act. (Ill. Rev. Stat. 1967, ch. 32, par. 157.52—2.) This would have required action on the part of the directors, notice to the shareholders, a two-thirds vote of the shareholders plus a proper filing of an amendment of the articles of incorporation. (Ill. Rev. Stat. 1969, ch. 32, pars. 157.53, 157.56.) The mere invention of the name "General Painting Contractors Co." and its designation as a division of Chicago Camcorp, Inc. gave rise to no new legal entity, nor did it inform creditors that Chicago Camcorp and General Painting Contractors were one and the same corporation.

▇▇ The defendants next argue that if plaintiff intended to deal with the corporation, there is no liability on the officers and shareholders of the corporation. Defendants urge that the case of *Pilsen Brewing Co. v. Wallace* (1919), 214 Ill.App. 540, is authority for this proposition and applicable to the case at bar.

In *Pilsen Brewing Co.* the facts were as follows: Wallace was the President of Farmers Grain & Feed Co., a valid Illinois corporation. The corporate minutes showed that on or about June 18, 1912, a resolution was adopted by the directors to change the corporate name to Chicago Grains and Feed Company, but a certificate of amendment to the articles was never filed with the Secretary of State. Subsequently, Wallace began to conduct corporate business under the name "Chicago Grain and Feed Company" and entered into a contract with the Pilsen Brewing Company whereby Chicago Grains was to purchase Pilsen's entire output of wet grains. Chicago Grains defaulted and, when the corporation was adjudicated bankrupt, Pilsen sought damages from the former officers of the corporation under the theory of a statute which read:

"If any person or persons being, or pretending to be, an officer or agent, or board of directors, of any stock corporation, or pretended stock corporation, shall assume to exercise corporate powers, or use the name of any such corporation, or pretended corporation, without complying with the provisions of this act, before all stock named in the articles of incorporation shall be subscribed in good faith, then they shall be jointly and severally liable for all debts and liabilities made by them, and contracted in the name of such corporation, or pretended corporation." Hurd's Rev. St. (1917), p. 702, J. & A. par. 2435.

The court refused to apply the statute, reasoning at page 545 that: "Obviously it was the intention that the contract between the parties should be between the plaintiff and the corporation of which the defendant was president and Beaird was secretary, that is, the Farmers Grain and Feed Company. The defendant and Beaird assumed to exercise corporate power because of the legal existence of the Farmers Grain and Feed Company. It may be true that they thought that the name of the Farmers Grain and Feed Company, owing to the action of the stockholders of that company, had been changed to the Chicago Grains and Feed Company. In that, however, they were mistaken."

In the case before us there is no evidence of any attempt to change the corporate name of Chicago Camcorp, Inc. beyond the testimony that Durchslag called General Painting Contractors a "division" of Chicago Camcorp, Inc. to alert the public to the nature of Chicago Camcorp's business. Thus, when plaintiff began dealing with General Painting Contractors, he was confronted with *two* entities: Chicago Camcorp, Inc. and its "division" General Painting Contractors. Testimony established that he considered the latter to be a "new company" formed by Durchslag. Unlike Pilsen Brewing Co. where the parties were dealing with one entity, it is not obvious that Anzalone was intending to do business with Chicago Camcorp when extending credit for materials on General Painting Contractors' account. Anzalone's intention was a question of fact which would appear to have been decided against defendant by the trier of fact. We, therefore, find *Pilsen Brewing Co.* distinguishable from the case at bar.

■ Finally, the defendants argue that because Anzalone dealt with General Painting as if it were a corporation, he should be estopped to deny its corporate existence. Defendants claim authority for this argument in the case of *Cresswell v. Oberly* (1885), 17 Ill.App. 281. This case is clearly distinguishable from the case at bar. In *Cresswell,* defendants attempted to form a corporation. They had performed all acts necessary, but for the final act which required them to file the certificate with the County Recorder, when they transacted some business with plaintiff. Thereafter, the certificate was properly filed and the corporation came into existence. Plaintiffs first sued the corporation and recovered a judgment against it. When they could not execute on the judgment, they sued the officers and shareholders of the corporation as partners for debts incurred prior to the filing of the certificate. The court concluded at page 284: "But while the evidence fails to show a corporation fully organized at the time the indebtedness in question accrued, we think the plaintiffs are precluded from alleging that its organization was not then complete. *They have elected to treat said indebtedness as an indebtedness of the*

*corporation, and to use the corporation and obtain judgment against it therefore. So far as they are concerned, all question on that subject should be deemed to have been foreclosed. The judgment having the effect of an admission by the plaintiffs in the most solemn form, that the claim for which it was recovered was the debt of a corporate body,* and therefore a debt in respect to which the members of the association were exempted from liability as partners, it should be held to operate against the plaintiffs as an estoppel." [Emphasis added.]

■ Because there is no estoppel by judgment in the case at bar, *Cresswell* is not in point. Furthermore, if a theory of estoppel were to be involved, at the very least there would have to be a showing that Anzalone intended to deal with a corporation and that the corporation thereby was caused to change its position to its detriment. (*Spreyne v. Garfield Lodge No. 1* (1904), 117 Ill.App. 253, 255.) The evidence in the trial court supports a conclusion that Anzalone was looking to Durchslag, not Chicago Camcorp, in his dealings that he was relying on Durchslag's credit, not the credit of General Painting Contractors Co. This, in turn, supports a finding of liability of defendants as partners in General Painting Contractors Co. for the debts of the company.

Judgment affirmed.

McNAMARA, P. J., and DEMPSEY, J., concur.