156  135|
74a 147|
156   135|
180  555|
84a 645,
156  135|
87a 611|
156   135|
100a 9313|

EMILE S. GUIGNON *et al.*

*v.*

THE UNION TRUST COMPANY *et al.*

*Filed at Mt. Vernon April 2, 1895.*

1. INTEREST—*upon principal note in foreclosure—unmatured interest notes.* Interest upon principal mortgage notes, matured by default, may, in foreclosure, be computed up to the date of the decree, although such interest is evidenced by unmatured interest notes, which latter contain a clause of defeasance upon payment of the principal notes.

2. BILLS AND NOTES—*protest—omission of "Jr." from signature of notary.* The omission of the suffix "Jr." from the signature of a notary to a certificate of protest does not justify the inference that two different persons officiated in the protest, although it is added to the notary's name in the body of the certificate.

3. SAME—*demand where payable sufficient.* Demand of payment at the place where notes are, by their terms, to be paid, is sufficient as to the maker.

4. SAME—*maker not entitled to notice.* A maker of a promissory note is not entitled to notice of dishonor.

5. SAME—*presentment and protest on last day of grace sufficient.* A note may be presented for payment, and protested, on the last day of grace.

6. CONFLICT OF LAWS—*note made and payable in another State secured on lands in this State.* A note made and payable in Missouri is governed by the Missouri statute allowing four per cent damages upon protested notes, although secured by mortgage on Illinois lands, notwithstanding the statute of Illinois providing that when any written contract, wherever payable, shall be secured by mortgage on lands in this State it may bear any rate of interest allowed to be taken in this State.

7. MORTGAGE—*trustee may claim reasonable compensation for foreclosure.* The trustee in a trust deed providing that he shall be entitled to a reasonable compensation for all services, to be paid by the mortgagor, may, upon foreclosure, be allowed a reasonable compensation for his services out of the proceeds of sale.

8. SAME—*trustee may be allowed counsel fees.* The trustee in a mortgage may, under a clause by which the mortgagor agrees to pay all the fees and charges of the trustee in executing the trust, be allowed reasonable counsel fees for foreclosing the mortgage.

9. ATTORNEYS' FEES—*what is a reasonable allowance.* The sum of $2250 is not an excessive allowance for a trustee's counsel fees for foreclosing a mortgage amounting to over $43,000, upon lands which have been sold by the mortgagor.

*Guignon* v. *Union Trust Co.* 53 Ill. App. 581, affirmed.

APPEAL from the Appellate Court for the Fourth District;—heard in that court on appeal from the Circuit Court of St. Clair county; the Hon. ALONZO S. WILDERMAN, Judge, presiding.

This was a bill in equity, brought in the circuit court of St. Clair county, to foreclose a mortgage. Upon a hearing in the circuit court, on the answer, replication and evidence, a decree was rendered in favor of the complainants in the bill, which, on appeal, was affirmed in the Appellate Court. The opinion of the Appellate Court is as follows:

"This was a suit brought by the Union Trust Company, trustee, William H. Alley, John B. Logan, Charles A. Mair, and the executors of the last will of Josephus Collett, deceased, against Emile S. Guignon, of St. Louis, Mo., and others, to foreclose a mortgage executed by Guignon to secure the purchase money of the lands in said mortgage described, amounting to $60,000, evidenced by his six principal promissory notes, for $6666.66⅔ each, and notes for the interest thereon, in favor of said Collett, and three principal notes for the same sum each, and notes for the interest thereon, in favor of Emily C. Lyon. Three of said nine principal notes matured March 18, 1892, three March 18, 1893, and the remaining three March 18, 1894. The principal and interest notes maturing March 18, 1892, and the interest notes maturing September 18, 1892, were paid at maturity. Five of the unpaid Collett notes were undisposed of when he died, and were held by his executors, and the remaining unpaid five notes he sold to complainant Alley, two of which, maturing March 18, 1893, were protested by Scudder, notary. Emily C. Lyon sold the five unpaid notes pay-

able to her, to complainant Mair, before maturity. The principal note due March 18, 1893, and the note for interest thereon due on same date for $400, were protested by Carr, notary, and complainant Lyon, after the protest, bought them of Mair, because Lyon had guaranteed their payment. The remaining three of said unpaid notes are held and owned by Mair. Damages of four per cent on the amount of the protested notes were asked for in the bill by virtue of the provisions of the Missouri statute, set out at length therein. The mortgage provides that compensation shall be made to the trustee for all services rendered, and also that the mortgagor agreed to pay all expenses, fees and charges of the said trust company in executing the trust. The bill also prays for an accounting, and payment of the amount which, under the bill and mortgage made part thereof, may be found due upon an account stated.

"The cause was heard by the court upon the bill, answer and evidence. All the defendants except August Gehner appearing, (and as to him the court found it had jurisdiction,) and he having failed to answer, the bill was taken as confessed by him. The court found all the material allegations of the bill were true, setting out the findings specifically, and also that the Union Trust Company, complainant, was entitled to $2650 as a reasonable compensation for its services and the necessary expenses incurred by it in and about the execution of the trust, and referred the cause to the master to compute the amount due each of the complainants, in view of the findings and the several notes which are part of the record ; and the decree then further recites, that on the 21st of December the master presented his report, finding $6986.83 due complainant Mair, $7720.33½ due complainant Lyon, $14,707.16 due complainant Alley, and $14,424.50 to complainant's executors, Jump and Bogart, and approves said report, and thereupon decrees that defendant Emile S. Guignon, within thirty-five days from

date of decree, pay to each of said parties the sum so due to each, respectively, with five per cent interest from date of decree upon all except said sum of $2650, which shall be taxed and included as costs. Decree then provides for sale of mortgaged premises in case of default, subject to redemption. Defendants appealed, and bring up the record to this court.

"The following errors are assigned : First, the decree is against the law and the evidence ; second, the decree is for too large an amount; third, the court erred in allowing four per cent damages, under the laws of Missouri, to Alley and Lyon ; fourth, the court erred in allowing $400 to the Union Trust Company for services, there being no evidence to support such allowance nor prayer in the bill; fifth, the court erred in allowing the Union Trust Company $2250 for solicitor's fees,—the amount is excessive, and there is no provision in the mortgage nor prayer in the bill to that effect ; sixth, the court erred in allowing the Union Trust Company $2650 for services and expenses incurred in the execution of the trust, as a part of the decree and costs ; and for other errors apparent in the record appellants pray for a reversal, etc.

"Under these assignments it is first objected that the master improperly allowed interest, in his computation, upon the three principal notes, for $6666.66$\frac{2}{3}$ each, maturing March 18, 1894, from September 18, 1893, to December 18, 1893,—the date of decree. These three notes, by their terms, were not due until March 18, 1894, but because of the default in not paying the notes due March 18, 1893, became due, together with accrued interest, by the terms of the mortgage, if the holders elected to declare them due, which they did. The interest notes last matured for the interest on these three principal notes became due March 18, 1893, and were allowed in the computation, but the accruing interest on the principal from that date up to the date of the decree was also equitably due the holders of said notes, and was properly included

in the computation made by the master. It is true, interest notes maturing March 18, 1894, were given, which would include and cover interest accruing for the period mentioned ; but these notes were not figured in said computation although offered in evidence, and each contained this clause : 'This is an interest note, subject to reduction or total defeasance, depending on payment on principal notes.' With such notice on the face of each it is quite improbable they could be sold to a purchaser for value, and if negotiated, there being nothing due thereon above the accruing interest so computed and allowed, no recovery could be had.

"It is also objected that the court erroneously allowed four per cent damages to complainants Alley and Lyon on protested notes, claimed in the bill to be due by virtue of the statute of Missouri. The mortgage notes held by Alley so protested were payable to Josephus Collett, one for $6666.66⅔, the other for $400, both due March 18, 1893, protested March 21, 1893, by William H. Scudder, Jr., protest signed William H. Scudder, sworn to by William H. Scudder, Jr., and it is insisted that the variance in the name of the notary is fatal, and that William H. Scudder, Jr., named in the body, and who swears to it, may be a different person from the William H. Scudder who signs it. In our judgment the omission of the addition 'Jr.,' in the one instance, does not justify the inference that two different persons officiated in the protest,—one making it and swearing to the fact, the other signing the certificate. William H. Scudder and William H. Scudder, Jr., was evidently one and the same person, and the court properly so held.

"It is next insisted the protests are insufficient to entitle the complainants, owners of the protested paper, to recover the four per cent damages allowed by the Missouri statute, for the reason no demand was made on Guignon, nor was any notice given him of the dishonor of the paper. The payment was demanded at the office

of the Union Trust Company in St. Louis, which was the place the notes were, by the terms thereof, to be paid. Other demand upon the maker was not required. Nor was he entitled to notice of dishonor. He was a primary debtor—not an endorser. 2 Daniel's Neg. Inst. (1st ed.) p. 47, sec. 995 ; *Donnell v. St. Louis Co.* 80 Mo. 172.

"It is next insisted the notes and mortgage are Illinois contracts, and are not within the operation of the Missouri statute allowing damages of four per cent upon the principal sum of a note duly presented for payment and protested for non-payment. The mortgage recites that Emile S. Guignon, the mortgagor, of St. Louis, Mo., mortgages and warrants to the Union Trust Company, of St. Louis, Mo., trustee, the lands described in the bill. All the notes were dated, executed and made payable at the office of said trust company in St. Louis, hence the place fixed for the performance of the contracts was St. Louis, and the notes are to be held Missouri contracts, and subject to the provisions of said statute. *Land Co.* v. *Roads*, 54 Mo. App. 129.

"It is further contended that the notes protested were endorsed by the payee in blank, and held by other parties at time of protest, not complainants in the bill, and who were then *prima facie* owners thereof, and therefore they, and not complainants Lyon and Alley, were alone entitled to the four per cent damages. The evidence of Lyon and Alley establishes the fact of their ownership of all of said notes as alleged in the bill, and they, as such, had the right to recover the damages allowed them, respectively, for non-payment and protest. The endorsement in blank was not intended to, and did not, vest the title of said protested notes, or either of them, in the Union Trust Company or State Bank of St. Louis.

"It is also insisted that the protests of the two Lyon notes, protested by Carr, are void, because the certificates of protest are not verified by his affidavit. The record shows they were so verified. And counsel for

appellant are also mistaken in their statement that it is not alleged in the bill that the notes were presented at the place where they were to be paid.

"It is further objected, that as the notes were due March 18, and the demand was made for payment on March 21 and protested on same day, and three days grace being allowed by the law, the protest was premature. In each certificate of protest it is recited that the notary presented the note during business hours, at the office of the Union Trust Company, St. Louis, Mo., the place of payment, on March 21, 1893, and demanded payment, which the maker refused. In *Cook* v. *Renick*, 19 Ill. 507, in was held that in the absence of statutory provision to the contrary, bill presented for payment on last day of grace was presented in proper time. In the case of *Corn Bank* v. *Barksdale*, 36 Mo. 373, it is said : 'It seems to be clearly established by the general current of authority, that the protest must be made on the same day the presentment and demand is made.' We think, under the proof, the demand was made at the proper time, and the protest on the same day was not premature.

"The allowance of $2250 solicitor's fees and $400 for services of trustee, to be taxed as costs, is assigned for error. It is provided in the mortgage that compensation shall be made to the trustee for all services rendered, and that the mortgagor agrees to pay all expenses, fees and charges of the said trust company in executing this trust, and it is so alleged in the bill, and it is prayed that an accounting be made, and for payment of whatever may be found due complainants under the allegations of the bill. In the absence of these clauses of the mortgage the trustee would be entitled to its reasonable expenses incurred in the execution of the trust, and all such expenses are a lien upon the mortgaged premises. (Perry on Trusts, sec. 910.) But with the provisions mentioned contained in the mortgage there can be no doubt that necessary and reasonable solicitor's fees, and

reasonable compensation to the trustee for services, were intended to be provided for and made a lien upon the land. The purpose was to secure to the mortgagees the payment in full of the principal and interest due them, exempt from any expense for collecting the same by law or in payment of the trustee's expenses and services in the execution of the trust. To collect the mortgage debt this proceeding in chancery became necessary, and the services of solicitors were required. Evidence was heard by the court showing that the amount allowed for such services and for compensation of the trustee was reasonble, and we do not feel justified in holding that it was excessive or unreasonable.

"It was error to compute damages on the interest due at the date of the decree, and order that they be paid, but appellees have entered a *remittitur* for the amount thereof, and cured the error. The decree is therefore modified by deducting from the amount allowed by the court below the amount of the *remittitur*, and decreeing that the balance be paid, and, as so modified, the decree is affirmed."

SPENCER & VAN HOOREBEKE, for appellants:

Our legislature makes a distinction in contracts made in another State, which are secured by mortgage on real estate situated in Illinois, when it is sought to enforce them by foreclosure of the mortgage in Illinois, thus applying *lex situs* and·not the *loci contractus.* *Post* v. *Bank*, 38 Ill. App. 260, and 138 Ill. 559; 1 Starr & Curtis, chap. 74, sec. 8, p. 1367.

It is only where the mortgage provides for the payment of a reasonable attorney's fee, to be paid, on foreclosure, out of the proceeds of the sale, that it can be allowed. The authorities are uniform. *Telford* v. *Garrells*, 132 Ill. 555 ; *McIntyre* v. *Yates*, 104 id. 503 ; *Mulcahy* v. *Strauss*, 52 Ill. App. 252 ; *Goodwin* v. *Bishop*, 145 Ill. 421; *Heffron* v. *Gage*, 149 id. 191.

In some of the States it is held that all stipulations for the payment of attorney's fees by the debtor, in whatever form such stipulation may be phrased, are absolutely void, as tending to the oppression of the debtor and to encourage litigation. *Witherspoon* v. *Musselman*, 14 Bush, 214; *Dow* v. *Updike*, 11 Neb. 95; *Spalding* v. *Bank*, 12 Ohio, 544; *State* v. *Taylor*, 10 id. 378; *Shelton* v. *Gill*, 11 id. 417; *Martin* v. *Bank*, 13 id. 250.

In the absence of a contract a trustee is not entitled to pay. *Cook* v. *Gilmore*, 33 Ill. App. 532.

In the case at bar there is no provision in the mortgage for the allowance of a solicitor's fee, nor any agreement to pay for the services of the trustee. But if there had been, the fee could not have been allowed without proper averments in the bill. *Stove Works* v. *Koch*, 30 Ill. App. 328; *Bremer* v. *Dock Co.* 123 Ill. 104.

A. & J. F. LEE, and CHARLES W. THOMAS, for appellees :

It has never been, to our knowledge, seriously contended before that a note should be demanded in two places of the same maker. That it must be demanded at the place of payment is well settled in Missouri. *Townshend* v. *Herr*, 85 Mo. 503.

The acceptor of a bill and the maker of a note are not entitled to notice, they being primary debtors. Daniel on Neg. Inst. (3d ed.) sec. 995 ; *Baker* v. *Block*, 30 Mo. 225.

All the authorities agree that no notice is necessary to bind the maker. *Donnell* v. *St. Louis Co.* 80 Mo. 172.

The protest must be made on the same day that the presentment and demand are made. (*Bank* v. *Barksdale*, 36 Mo. 573.) And it may be made on the day of dishonor, after payment or acceptance has been refused. 2 Am. & Eng. Ency. of Law, 414.

The protest completed, it is authenticated by the signature and seal of the notary. 2 Am. & Eng. Ency. of Law, 406.

The courts take judicial notice of the seal of the notary, and the protest is evidence of all the statements properly contained in it.    *Townsley* v. *Sumrall*, 2 Pet. 170.

Mr. JUSTICE CRAIG delivered the opinion of the court:

We concur in the judgment of the Appellate Court, and it will only be necessary to add a few words in addition to what is said in the opinion of that court.

It is insisted in the argument that the Appellate Court erred in affirming that part of the decree wherein four per cent damages were allowed on the protest of a note, as provided for by the statute of Missouri, as construed by the Supreme Court of that State in *Clark* v. *Snyder*, 17 Mo. 296, and other cases. In support of this position reliance is placed on section 8, chapter 74, page 835, of Hurd's Statutes, viz.: "When any written contract, wherever payable, shall be made in this State, or between citizens or corporations of this State, or a citizen or corporation of this State and a citizen or corporation of any other State, territory or country, (or shall be secured by mortgage or trust deed on lands in this State,) such contract may bear any rate of interest allowed by law to be taken or contracted for by persons or corporations in this State, or which is or may be allowed by law on any contract for money due or owing in this State." We do not think this section of the statute controls the question involved. Here the contract was made in Missouri, and was payable in that State, and the right to recover the damages on the protest of the note depends upon whether the notes are to be construed according to the laws of Illinois or the laws of Missouri. If the latter, then the damages were properly allowed.

In 1 Jones on Mortgages (ed. of 1894) the author says: "The validity of a contract secured by a mortgage made in one State upon lands in another State, depends, so far as the usury laws affect it, upon the question, by the law of which State is the contract itself governed? If

the loan is to be repaid in the State where it is made, the contract will be governed by the laws of that State, even when secured by mortgage of land situate in another State." (Sec. 657.) "The authorities, generally, do not regard the circumstance that the loan is secured by mortgage, in determining whether it is usurious." (Sec. 660.) "But as to the form and validity of the mortgage deed as a conveyance, the law of the place where the land is situated must always govern." (Sec. 662.)

In 1 Daniel on Negotiable Instruments, (ed. of 1891, p. 930,) the author says : "The rate of interest which a bill of exchange or promissory note bears when no rate is specified, and the question whether or not it shall bear interest, are both determinable by the law of the place where it is expressly or impliedly to be paid." (Sec. 918.) "The rule applicable to interest applies as well to what is distinctly termed 'damages.' Each party, drawer, endorser and acceptor is liable according to the place where the bill is drawn, endorsed or accepted." (Sec. 921.)

Sections 1 and 2, chapter 98, of Hurd's Statutes, entitled "Negotiable Instruments," provide for the payment of damages on bills of exchange protested for non-payment in certain specified cases. This statute would seem to indicate that the allowance of damages to the holder of protested commercial paper was not contrary to the policy of the State.

Under the authorities we are of opinion that the laws of Missouri, where the paper was payable, must control.

Testimony was introduced before the master showing what the services of the solicitor were reasonably worth in the case, and from the evidence the master reported as follows : "The master further reports, from the evidence, that a reasonable sum for expenses for attorneys for the trustee is $2250." The evidence before the master also showed that the services of the Union Trust Company were reasonably worth $400. The report of the master was approved, and the court, in its decree,

found "that the Union Trust Company is entitled to $2650 as a reasonable compensation for its services, and the necessary expenses incurred by it, in and about the execution of the said trust cause referred to master for computation." Upon this finding the court, among other things, decreed "that out of the proceeds of the sale the master in chancery pay, first, the costs of this suit and of said sale, including $2650 to said Union Trust Company." As has been seen, the decree was affirmed in the Appellate Court, and it is insisted that the decision approving the allowance of $2650 to the Union Trust Company is erroneous.

It will be observed that the allowance of $2650 embraced two items: First, $400 for the services of the Union Trust Company; second, $2250 to cover reasonable solicitor's fees for foreclosing the mortgage. We will consider the two items separately.

As respects the first, the deed of trust contains this provision: "It is agreed that said trustee, under this indenture, shall be entitled to a reasonable compensation for all services rendered thereunder, to be paid by the said mortgagor." Here is an express agreement by the mortgagor to pay the trustee compensation for his services, and the evidence shows that the compensation was worth $400,—the amount allowed by the court,—and we see no reason why, under the agreement and evidence, the allowance should be disturbed.

Appellants' attorneys have cited and rely on *Heffron* v. *Gage,* 149 Ill. 182, as an authority sustaining their position. An examination of the decision in that case will show that it has no bearing on the question. In that case the circuit court allowed a trustee's fee and also solicitors' fees, but on appeal to the Appellate Court the decree was set aside as to trustee's fee and affirmed in all other respects. The defendants appealed to this court, and we affirmed the judgment of the Appellate Court. But the trustee who was defeated in the Appel-

late Court assigned no cross-errors, and the ruling of the Appellate Court as to his fee was not called in question, and nothing was decided or said on that subject.

We now come to the question as to the amount allowed the Union Trust Company for solicitor's fees. The mortgage contains a provision for releasing portions of the mortgaged property upon certain payments being made, and then follows this clause: "The mortgagor agrees to pay all expenses of such releases, as well as all other fees and charges of the said trust company in executing this trust." Here the Union Trust Company, the trustee named in the mortgage, was called upon by the holders of the mortgage indebtedness to foreclose the mortgage. In order to do this it was necessary for it to employ solicitors,—men skilled in that department of the law. The company was not a lawyer, and could not, without the assistance of a solicitor, foreclose the mortgage, and whatever expense the company incurred in foreclosing the mortgage, reasonable in amount, would, in our opinion, fall within the clause of the mortgage *supra,* providing for fees and charges.

Objection is made to the amount allowed. The amount of the mortgage foreclosed was over $43,000. The mortgaged lands had been sold by the mortgagor, and in foreclosing care and skill were required, in order to secure a good title, under the decree, in case no redemption was made. Under all the circumstances we are not inclined to hold that the amount allowed was too large.

The judgment of the Appellate Court will be affirmed.

*Judgment affirmed.*