### Harrison Schmisseur, Appellee, v. Elizabeth Rebhan, Appellant.

Opinion filed March 9, 1938.

W. E. KNOWLES, of East St. Louis, for appellant.

P. C. OTWELL, GEORG F. KELLING, CHARLES P. HAMILL and P. K. JOHNSON, all of Belleville, for appellee.

MR. JUSTICE EDWARDS delivered the opinion of the court.

Harrison Schmisseur, as guardian of certain minors, in 1932, prior to the enactment of the Civil Practice Act, filed a bill to foreclose a mortgage executed

by defendant Elizabeth Rebhan, to secure an indebtedness of $12,000. It joined as defendants Frank H. Carson, trustee in a mortgage to secure certain notes aggregating $27,800, and also the several holders of the notes thereby secured. The Carson mortgage was a junior lien upon the premises sought to be foreclosed by the Schmisseur mortgage. The noteholders answered the bill, asking that they be paid any surplus of the proceeds of sale of said premises after satisfying the indebtedness of the first lien.

Elizabeth Rebhan, mortgagor and defendant, admitted the execution of the Schmisseur mortgage, and apparently did not contest the complainant's right to foreclose. She did, however, assert in such answer that in a certain proceeding brought by the Belleville Bank and Trust Co. to foreclose a mortgage on the property on which the Carson trust deed was a second lien, together with other real estate, Carson, as trustee, and the various noteholders were made defendants in such suit; that they severally answered, asserting their interests, but asking for no affirmative relief; that such cause went to final decree, and that the issues in the *Belleville Bank* case were the same as in the instant proceeding; whereby the decree in the last mentioned case became and was *res adjudicata* of all the issues which were or could have been determined in such cause, and hence not a proper subject for adjudication in the pending suit.

The cause was referred to a master who found contrary to the claim of Mrs. Rebhan, and the chancellor entered a decree granting the relief prayed for in the bill of complaint, and adjudging that the rights of the holders of the notes secured by the Carson mortgage had not been previously determined, and that they were entitled to proportionally share in the proceeds of sale of the mortgaged property after satisfying the demand of the complainant.

From this decree Mrs. Rebhan has appealed. Having pleaded former adjudication as an affirmative defense, she assumed the burden of establishing same by the greater weight of the evidence; *Neill v. Chavers,* 348 Ill. 326; *Young v. People,* 171 Ill. 299.

It is the undoubted law of this State that where issues have been determined by a competent tribunal, or were such that they might have been presented and adjudged upon in such proceeding, they become *res adjudicata* and cannot be considered and passed upon in a subsequent action; *Webb v. Gilbert,* 357 Ill. 340; *Phelps v. City of Chicago,* 331 Ill. 80. It is further the rule that a judgment or decree is not a bar to the further prosecution of claims, or the interposition of defenses, where the same, although asserted or set up in the prior suit, were withdrawn from the consideration of the court or for any reason, such as by agreement of the parties, were not submitted for decision; as held in *Palmer v. Sanger,* 143 Ill. 34; *Levy v. Solomon,* 207 Pa. 478, 56 Atl. 1007; *Finnegan v. Campbell,* 74 Iowa 158, 37 N. W. 127; *Cockerill v. Stafford,* 102 Mo. 57, 14 S. W. 813; *Troxell v. Delaware, L. & W. R. Co.,* 227 U. S. 434, 57 L. Ed. 586.

At the hearing of the *Belleville Bank* case the matters of the foreclosure of the Carson mortgage and the validity of a note secured by it, being the $15,000 note and bond executed to order of the Western Catholic Union, were raised. There was objection by counsel for the bank that the latter had no interest in the question and that it was unfair to encumber the record with testimony pertaining to an extraneous matter. It appears from the testimony of Harold Baltz, attorney for the bank, and Charles P. Hamill of counsel for certain other noteholders secured by the Carson mortgage, that it was then agreed by all attorneys in the case, including W. E. Knowles, counsel for Mrs. Rebhan, "and the other attorneys under the second mort-

gage that they would take up that point in the suit brought to foreclose the second mortgage."

W. E. Knowles denied such agreement. We find, however, that the decree in the *Belleville Bank* case, referring to the Carson mortgage, finds "that the defendants above named, being holders of notes under said mortgage, ask for no affirmative relief in this cause, and that there is a controversy concerning the validity of a $15,000 note held by the Supreme Council of the Western Catholic Union, as between the Council and Elizabeth Rebhan, which controversy is the subject matter of another proceeding pending in this cause."

It thus appears that the court, by not passing upon the validity of said note and stating that the noteholders under the Carson mortgage asked for no affirmative relief in regard to certain property secured thereby which was not included in the mortgage held by the Belleville Bank, and which Carson mortgage was the subject of foreclosure in a different proceeding then pending in such court, recognized that the agreement as testified to by Baltz and Hamill was in fact entered into and is corroborative of their testimony. It is said that the objection only went to the matter of the $15,000 note and to none of the others secured by the Carson mortgage. It will be noted that Harold Baltz stated that the agreement was entered into "by Mr. Knowles, who raised the question, and myself who made the objection, and the other attorneys under the second mortgage, that they would take up the point in the suit brought to foreclose the second mortgage." If the attorneys who represented the holders of the other notes under the Carson mortgage entered into such arrangement, it seems obvious that the understanding included the notes held by their clients, as they would not be interested in the controversy over the $15,000 note, and would only be con-

cerned with protecting the interests of those whom they represented. We think the weight of the evidence supports the contention that such agreement was entered into.

Mrs. Rebhan, as previously observed, rested under the obligation of proving such former adjudication by a preponderance of the evidence, and within the rule of the authorities cited, if she through her counsel consented that such matter would not be considered in the *Bank* case, then upon no principle of fairness or right can it be said by her that such propositions were decided in the then litigation, and the chancellor correctly decreed that the rights of the holders of the notes secured by the Carson mortgage had not been adjudicated in the *Belleville Bank* case.

One of the notes secured by the Carson mortgage, in the sum of $15,000, was indorsed to the supreme council of the Western Catholic Union, same being in discharge of a bond executed by Mrs. Rebhan as surety for one Ruediger pursuant to a written agreement. Both bond and agreement named Western Catholic Union as the obligee therein. Mrs. Rebhan contends that this suit cannot therefore be prosecuted in behalf of supreme council of the Western Catholic Union, and that the chancellor erred in decreeing that same might be done.

The master, on such question, made a finding: "A copy of the proceedings of the Western Catholic Union indicates that the words 'Western Catholic Union' were used only with reference to the corporation the name of which was Supreme Council of the Western Catholic Union. There is also evidence in the record that the description, Western Catholic Union, was used interchangeably with Supreme Council of the Western Catholic Union, apparently in accordance with section 1 of the corporation's constitution set out above, and for the sake of brevity and convenience. Western

Catholic Union was not the name of any legal entity, and has and had in this record no meaning apart from the corporation the correct name of which was Supreme Council of the Western Catholic Union." The decree adopted the master's finding, which we think was warranted by the evidence.

In *Malleable Iron Range v. Pusey*, 244 Ill. 184, the court quoted with approval and adopted the rule stated in Thompson on the Law of Corporations, Vol. 1, sec. 294: "There is a general concurrence of modern authority to the effect that a misnomer or variation from the precise name of the corporation in a grant or obligation by it or to it is not material if the identity of the corporation is unmistakable, either from the face of the instrument or from the averments and proof."

We think that the intention of both parties to the note was that the obligation, in truth, existed in favor of the supreme council of the Western Catholic Union, and that it would be a perversion of justice to hold that the mere variation, by abbreviation, of the corporate name, should preclude a recovery against one justly indebted upon the obligation, who dealt with the corporation and who has been in no way misled or injured by the misdescription of the corporate name in the several instruments which she executed. The evidence amply proves that Mrs. Rebhan was indebted upon the note for $15,000, and that the decree so finding was correct.

A further ground urged for reversal is that the interest on the obligation was erroneously computed. The finding was that on March 9, 1936, the date of the master's report, there was due $15,124.75 for principal, interest, insurance and making minutes of title. The decree entered on January 28, 1937, ordered said amount paid, with interest thereon from March 9, 1936. This was error, as the interest on the total amount

found due should have been computed at the legal rate from date of decree after the manner of a judgment; *Hoover Steel Ball Co. v. Schaefer Ball Bearing Co.,* 90 N. J. Eq. 515, 107 Atl. 425. The Schmisseur note secured by the mortgage drew interest at 6 per cent, and should have been so computed until date of the decree, upon $12,000; *Guignon v. Union Trust Co.,* 156 Ill. 135.

The period of time between filing of the master's report and the entry of decree was approximately one year. The interest for such period upon $15,124.75, the amount found due by the master, at 5 per cent, would be in the neighborhood of $750; the interest upon $12,000 at 6 per cent for the same period would be $720. This would make a difference in favor of Mrs. Rebhan, and even if small she has the right to insist upon the interest being correctly computed.

The decree is in all things affirmed, except as to the computation of interest as aforesaid, in which respect it is reversed, with directions to compute the interest on the $12,000 note to the date of decree.

*Affirmed in part, reversed in part, and remanded with directions.*