**In re Robert L. DANIELS, Jr., Debtor.**

**Nos. 88 C 9058, 87 B 3899.**

United States District Court,
N.D. Illinois, E.D.

July 7, 1989.

Robert J. Adams, Robert J. Adams & Associates, P.C. (James J. McGraw, Chicago, Ill., of counsel), for debtor.

Marc C. Scheinbaum, Fisher & Fisher, P.C., Chicago, Ill., for creditor.

## MEMORANDUM AND ORDER

MORAN, District Judge.

We review herein Judge Schmetterer's amended memorandum opinion and order denying the debtor's motion to receive the post-judgment rate of interest on the judgment of foreclosure. Robert L. Daniels, Jr. ("debtor") urged approval of his Chapter 13 Plan ("Plan"), which provided for payment to Fleet Mortgage Corporation ("Fleet" or "creditor") of the foreclosure judgment, with interest to accrue at the rate of 9 per cent—the Illinois statutory post-judgment rate of interest. 91 B.R. 51. Fleet objected to the proposed plan, contending the mortgage note and contract rate of interest, 15-½ per cent, should govern. For the following reasons, we remand to Judge Schmetterer for proceedings consistent with this opinion.

## FACTS/PROCEDURAL HISTORY

On December 27, 1981, the debtor executed a note in favor of Mortgage Associates, Inc., secured by a mortgage on certain residential property that was and remains debtor's only residence. Fleet Mortgage subsequently received the note via assignment. The outstanding debt was to be paid monthly, with interest accruing at 15-½ per cent annually "until paid." The mortgage was to be retired on January 1, 2012, long after the proposed Plan ends. Under the proposed plan the debtor maintains his current residence.

Debtor made the required mortgage payments until June 1986, when he defaulted. Pursuant to the Illinois Mortgage Foreclosure Act, Fleet brought a foreclosure action in this court. On February 5, 1987, this court entered a default order and a judgment of foreclosure and sale ("default order"), finding the total indebtedness to be $39,926.60 including principal, interest to that date, attorneys' fees and costs. Because debtor asserts the home's value to be $46,000, he claims an equity of about $6,000 in the property. Our judgment, like

all judgments of foreclosure and sale in federal court, merely appointed a special commissioner to sell the property.

On March 13, 1987, more than five weeks after the default order but before the sale of the property, debtor filed for bankruptcy under Chapter 13. Pursuant to 11 U.S.C. § 362(a) further foreclosure proceedings, including the sale of the home, were stayed by that petition. Confirmation of debtor's plan awaits a final decision respecting his proposal to pay Fleet's judgment over the maximum five-year period permitted under 11 U.S.C. § 1322(c). In order to permit a sale of the residence at issue, Fleet urged modification of the stay. It has, however, agreed to await decision on the interest issue. The stay, therefore, has remained in effect by agreement of the parties.

## DISCUSSION

█ Within foreclosure law terminology, Illinois can be described as a "lien," not a "title" state. The entry of a foreclosure judgment—sometimes called the "merger of mortgage into foreclosure judgment"—does not alter the creditor's possession of the mortgage lien nor pass title, only the foreclosure *sale* does that. Under both the new and old Illinois foreclosure laws "it cannot be said that a judgment of foreclosure ... terminates the pre-foreclosure relationship between mortgagor and mortgagee." *Compare In re Josephs*, 85 B.R. 500 (Bankr.N.D.Ill.1988) (new law) *with In re Schnupp*, 64 B.R. 763 (Bankr.N.D.Ill. 1986) (old law).

█ We review that law to ascertain the creditor's interest in the debtor's residence. Since the default order does not terminate the mortgage, Fleet never received a judgment lien but rather maintains its prior lien. Pursuant to the Bankruptcy Code such "lien [s] created by agreement" are "security interest [s]" under 11 U.S.C. § 101(45). The default order therefore did not alter Fleet's security interest in the debtor's residence.

█ Those rights are specifically protected by the Bankruptcy Code. Under 11 U.S.C. § 1322(b) the Plan may

(2) modify the rights of holders of secured claims, *other than a claim secured only by a security interest in real property that is the debtor's principal residence*, or of holders of unsecured claims, or leave unaffected the rights of holders of any class of claims....

(emphasis added). The proposed judgment order, therefore, cannot alter any of Fleet's claims secured by the mortgage at issue. Judge Schmetterer held that that order would modify Fleet's rights under the mortgage by, *inter alia*, altering the timing and payment amounts, including adjusting the interest rate. We review here only whether the order's use of the Illinois statutory interest rate is a modification within the meaning of § 1322(b)(2).

In order to ascertain whether the proposed judgment order modifies Fleet's rights, we review the parameters thereof *at the time of the Chapter 13 petition*. That filing came after this court's February 5, 1987 default order. The core dispute centers on the effect of that ruling.

We do not question that a default order in Illinois does not alter the creditor's possession of the mortgage lien nor pass title. But that conclusion does not end the inquiry. The question remains whether the default order might still affect other aspects of the parties' contractual relations unrelated to title, *e.g.*, the right to interest. We first review the use of "judgment" within the meaning of the Illinois statute in relevant part. That provision states:

§ 2–1303. Interest on judgment. Judgments recovered in any court shall draw interest at the rate of 9% per annum from the date of the judgment.... When judgment is entered upon any award, report or verdict, interest shall be computed at the above rate, from the time when made or rendered to the time of entering judgment upon the same, and included in the judgment. Interest shall be computed and charged only on the unsatisfied portion of the judgment as it exists from time to time. The judgment debtor may by tender of payment of judgment, costs and interest accrued to

the date of tender, stop the further accrual of interest on such judgment notwithstanding the prosecution of an appeal, or other steps to reverse, vacate or modify the judgment.

Ill.Rev.Stat. ch. 110, ¶ 2–1303.

■ While not altering the creditor/debtor relationship respecting title, the default order was also not rendered irrelevant by the debtor's subsequent Chapter 13 filing. Pursuant to Illinois law a default order (or foreclosure decree) merges the real estate mortgage and the mortgage indebtedness. *See, e.g., Carter Oil Co. v. Durbin*, 376 Ill. 398, 34 N.E.2d 407 (1941), *cert. denied sub nom., Koeberlein v. Durbin*, 314 U.S. 644, 62 S.Ct. 85, 86 L.Ed. 517 (1941). A single lump sum is thereafter owed to the creditor and is secured by the remaining lien on the property. In effect, the default order merges the mortgage and the note into a single judgment—one that does not affect title.

That judgment does, however, represent a watershed respecting the computation of interest. In Illinois this line of cases evolved quite early. In *Aldrich v. Sharp*, 3 Scammon 261, 4 Ill. 260 (Ill.1841), the court held that

> where a judgment is obtained on a contract, the contract is at an end, being merged in the judgment, and the judgment is controlled, not by the contract, but by the statute, which [then] gives interest only at the rate of six per centum per annum. We see no reason why the rule should not be applicable to decrees in chancery for the foreclosure of mortgages.

3 Scammon at 262, 4 Ill. at 262. The potentially sweeping scope of this holding was subsequently clarified and thereby narrowed in *Williams v. Brunton*, 3 Gilman 600, 8 Ill. 600 (Ill.1846). The court there alluded to *Aldrich*, but limited the scope of the merger at issue in mortgage foreclosures:

> It is true that a judgment or decree may, for *some purposes* be considered as an extinction of the original cause of action; for instance, for *the purpose of regulating the interest on money to which a party is entitled before final satisfac-*

*tionn of the debt as was the case in 3 Scam. 263 [Aldrich]*, to which authority the appellant has directed our attention, but it is equally true, that for many *other purposes, as for the ascertaining of priority of liens*, for instance, the principle of extinction or merger finds no application.

3 Gilman at 622, 8 Ill. at 623 (emphasis added).

The *Aldrich* rule, if we can call it that, has been applied in this century as well. In reversing the Circuit Court's computation of interest, the Fourth District held:

> The decree provided that interest should be computed upon $32,262.50, the amount found due by the master's report filed on March 14, 1936, at the legal rate of 5 per cent. This was error. Interest should have been computed upon the principal of $24,500 at 6 per cent, the rate which the obligation bore, to the date of decree January 28, 1937; *Guignon v. Union Trust Co.*, 156 Ill. 135 [40 N.E. 556 (1895)]; 42 Corpus Juris, p. 144, sec. 1740; and after such date at the legal rate on the full amount found due, it then becoming in effect a judgment; *Hoover Steel Ball Co. v. Schaefer Ball Bearing Co.*, 90 N.J.Eq. 515, 107 Atl. 425.

*Carson v. Rebhan*, 294 Ill.App. 180, 182–83, 13 N.E.2d 630 (4th Dist.1938). Invoking the same cases, the same court held in *Schmisseur v. Rebhan:*

> This was error, as the interest on the total amount found due should have been computed at the legal rate from date of decree after the manner of a judgment; *Hoover Steel Ball Co. v. Schaefer Ball Bearing Co.*, 90 N.J.Eq. 515, 107 Atl. 425. The Schmisseur note secured by the mortgage drew interest at 6 per cent, and should have been so computed until the date of the decree, upon $12,000; *Guignon v. Union Trust Co.*, 156 Ill. 135 [40 N.E. 556].

294 Ill.App. 172, 178–79, 13 N.E.2d 627 (4th Dist.1938).

■ While it is true, as Judge Schmetterer's January 21, 1988 opinion points out, that none of these cases concern interest

rates on judgments in bankruptcy proceedings, we consider that a distinction without a difference. First, many cases cited in support of this distinction discuss the interest rate applicable to attempts by the debtor to cure the then existing deficiency, thereby seeking to reinstate and obtain the advantages of the mortgage.[1] For example, Judge Roney, the author of *In Re Terry*, in describing that court's holding, stated:

> In these cases we hold that under Chapter 13 of the Bankruptcy Code, a secured creditor who holds a security interest in the debtor's principal residence is not entitled to receive interest on arrearages, unless the mortgage contract so provides, *when the debtor seeks to cure default and reinstate the mortgage.*

*In Re Terry*, 780 F.2d 894, 895 (11th Cir. 1985) (emphasis added); *see also In re Frey*, 34 B.R. 607, 611 (Bankr.M.D.Pa.1983) ("we will allow the debtors to cure their default"); *In Re Thorne*, 34 B.R. 428, 429 (Bankr.E.D.Tenn.1983) ("In his chapter 13 plan the debtor proposed to cure the default by paying the amount in arrears"). Here, however, the debtor disclaims any wish to cure under § 1322(b)(5). There is little indication that those cases evaluated the *post-default order* rights of the secured creditors, nor can we tell whether the various forum states were lien or title states. Third and most importantly, federal law—for these purposes § 1322(b)(2)'s prohibition against modification of claims secured by a security interest in the debtor's principal residence—looks to the date of filing to ascertain creditor rights outside of bankruptcy. At that date the rate of interest was already governed by statute: the contract rate governs the interest up to the foreclosure decree and the statutory judgment rate governs thereafter. To the extent Fleet's claim was modified, that action was accomplished by the judgment de-

cree—five weeks prior to the bankruptcy filing. But for our holding below, the proposed order would not modify Fleet's claim, would not run afoul of § 1322(b)(2)[2] and cram down would therefore be appropriate under 11 U.S.C. § 1325(a)(5)(B)(ii).

■ We do, however, raise a slightly different aspect of the interest rate issue *sua sponte*. We review whether the Illinois or federal statutory rate applies to the period following the default order. In earlier times, the issue was moot as the federal post-judgment rate merely echoed that specified in "the law of the State in which such court is held." 28 U.S.C. § 1961, amended by Pub.L. 97–164, § 302(a)(1), (2), effective October 1, 1982. Now, however, the federal rate tracks something quite different:

§ 1961. Interest

(a) interest shall be allowed on any money judgment in a civil case recovered in a district court.... Such interest shall be calculated from the date of the entry of the judgment, at a rate equal to the coupon issue yield equivalent (as determined by the Secretary of the Treasury) of the average accepted auction price for the last auction of fifty-two week United States Treasury Bills settled imediately prior to the date of the judgment. The Director of the Administrative Office of the United States Courts shall distribute notice of that rate and any changes in it to all Federal Judges.

96 Stat. 25, 55–56, codified at 28 U.S.C. § 1961(a). While the parties have not briefed the choice of law issue, we hold their implicit choice of the state interest rate to be incorrect.

This inquiry again reverts back to the foreclosure decree where we ruled pursuant to the Illinois Mortgage Foreclosure Act. Various authorities have split over

---

1. Others, such as *Debentureholders v. Continental Investment Corp.*, 679 F.2d 264 (1st Cir.1982), *cert. denied sub nom.*, *Glen Corp. v. O. C. Associates*, 459 U.S. 894, 103 S.Ct. 192, 74 L.Ed.2d 155 (1982), are not in the residential mortgage context and therefore do not address how the foreclosure decree impacts on the preexisting rights of the secured creditor.

2. While we recognize that § 1322(b) also permits the debtor to propose a cure and deaccelerate arrearages rather than to pay off the full foreclosure judgment, the code does not compel that choice.

whether the federal or state interest rate should be applied in diversity actions. *Compare Nissho–Iwai Co., Ltd. v. Occidental Crude Sales, Inc.,* 848 F.2d 613 (5th Cir.1988) (applying federal interest statute); *Weitz Co., Inc. v. Mo–Kan Carpet, Inc.,* 723 F.2d 1382 (8th Cir.1983) (same); *G. M. Brod & Co., Inc. v. U.S. Home Corp.,* 759 F.2d 1526 (11th Cir.1985) (same) *with Weitz Co., Inc. v. Mo–Kan Carpet, Inc.,* 723 F.2d 1382, 1387 (8th Cir.1983) (Swygert, J.,[3] dissenting) (arguing that *Bernhardt v. Polygraphic Co.,* 350 U.S. 198, 76 S.Ct. 273, 100 L.Ed. 199 (1956), compels application of the state interest statute). The dispute concerns whether *Erie Railroad Co. v. Tompkins,* 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938), and its progeny permit Congress to dictate the judgment interest rate in diversity actions. Those courts that have answered in the affirmative contend that the new federal statute explicitly covers "any judgment in a civil case recovered in a district court" and that therefore the conflicting state statute must give way to the federal procedural rule under *Hanna v. Plumer,* 380 U.S. 460, 471, 85 S.Ct. 1136, 1144, 14 L.Ed.2d 8 (1965). Those authorities that have disagreed argue a congressional intent to override the applicable state authority cannot be inferred and that application of the federal rate would promote forum shopping between the state and federal courts, based on a comparison between state rate and the then existing treasury rate.

Here in the Seventh Circuit no uncertainty remains. In *Travelers Insurance Company v. Transport Insurance Company,* 846 F.2d 1048 (7th Cir.1988), Judge Coffey, quoting extensively from *Weitz, supra,* reversed the district court's application of the state law post-judgment interest rate in the diversity action at issue and ordered recomputation under the federal rate. 846 F.2d at 1053–54. That interpretation of § 1961 applies equally to bankruptcy proceedings,

see, e.g., *In re Mapson,* 93 B.R. 161, 171 (Bankr.C.D.Ill.1988); *In re Goldblatt Bros., Inc.,* 61 B.R. 459, 466 (Bankr.N.D.Ill. 1986), and also governs our holding today.

 Procedurally, therefore, we need to reexamine the proposed order. The federal rate governs the period following the default order, yet the proposed order utilizes the state rate. Consequently, that order "modifies" the rights of holders of claims secured only by a security interest in real property that is the debtor's principal residence, in violation of 11 U.S.C. § 1322(b). As we explain above, the proposed order therefore cannot be crammed down under 11 U.S.C. § 1325(a)(5)(B)(ii). The case is therefore remanded to Judge Schmetterer for proceedings consistent with this opinion.[4]

CONCLUSION

For the foregoing reasons, we remand to the bankruptcy court.

---

**3.** Sitting by designation from the United States Seventh Circuit Court of Appeals.

**4.** While those proceedings continue, we would entertain a reconsideration motion were the

debtor capable of producing persuasive authority that the state, as opposed to the federal rate, should be employed in relatively unique circumstances such as these.